14162

NALLEY v. METROPOLITAN LIFE INS. CO.

(182 S. E., 301)

*Messrs. Leppard & Leppard,* for appellant,

*Messrs. Haynsworth & Haynsworth,* for respondent,

November 7, 1935.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The defendant, Metropolitan Life Insurance Company, on February 18, 1928, issued its policy of life insurance to the plaintiff in the sum of $1,000.00. Forming a part of the policy, and attached thereto was a supplementary contract providing for certain benefits for total and permanent disability, hereinafter referred to.

On October 29, 1932, the plaintiff brought suit, alleging in his complaint a total and permanent disability occurring on the 6th day of March, 1931, caused by reason of disease, infirmities, and disabilities contracted while said insurance

was in full force and effect. The complaint also alleged that the plaintiff duly complied with all the terms, provisions, and conditions of the insurance contract and the supplementary contract; and, further, that due proof of the plaintiff's total and permanent disability had been filed with the defendant.

The defendant admitted the issuance of the policy, and that the insurance thereunder was in full force and effect, but alleged that "the alleged total and permanent disability and disease from which plaintiff was suffering, if any, and now claims to be suffering, is not, and was not, the result of bodily injuries or disease occurring and originating after the issuance of said policy, but that such disability, disease and sickness existed long prior to the issuance of the policy, and defendant therefore is not liable to plaintiff for any disability benefits."

At the close of all of the testimony, his Honor, Judge Greene, upon motion of the defendant, granted a directed verdict in its favor upon the ground: "That the evidence admits of no other conclusion than that the disability from which the plaintiff complains is the result of the injury sustained prior to February 18th, 1928, and is, therefore, not covered under the terms of the policy."

The case is here on appeal on exceptions challenging the correctness of the directed verdict, and with the admission of certain evidence over plaintiff's objection. The appellant, contends, first, that there was sufficient testimony to go to the jury upon the question as to when appellant contracted the disease, epileptic convulsions, whether before or after the issuance of the contract of insurance; second, that there was sufficient testimony to go to the jury upon the question of whether appellant's disability arose from heart trouble, independent of the injuries occurring to plaintiff ·before the issuance of the insurance policy; and, third, upon the question whether the disease, epileptic convulsions, was caused by the injuries to appellant in the year 1914, fourteen years before

the insurance policy was issued to plaintiff, or whether said disease arose from some other and unknown cause.

These exceptions are so closely related that we shall consider them together. The provision of the policy pertinent to the issues raised on this appeal reads as follows: "Upon receipt by the Company at its Home Office in the city of New York of due proof, on forms which will be furnished by the Company, on request, that the insured has, while said policy and this supplementary contract are in full force and prior to the anniversary date of said Policy nearest to the sixtieth birthday of the insured, become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said Policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months, it will, during the continuance of such disability," etc.

In his brief the appellant, for the first time, takes the position that this case should have been submitted to the jury on the question of waiver. We may not consider this question, because it was not presented to nor passed upon by the presiding Judge, nor is it raised by appellant's exceptions. *Hamilton Ridge Lumber Corp. v. Boston Ins. Co.,* 133 S. C., 472, 131 S. E., 22; *London v. Youmans,* 31 S. C., 147, 9 S. E., 775, 17 Am. St. Rep., 17.

A brief review of the testimony becomes necessary.

The appellant testified that during the year 1914 he was assisting in the construction of a building in Anderson, and that in the course of the work, while he was attempting to raise a steel beam into place, with a pole, the pole broke, and a piece of timber struck appellant in the head, knocking him unconscious, and fracturing his skull. As a result of this injury, the appellant's forehead since that time has been sunken in at the place where the timber struck him. Subsequently, he moved from Anderson to Greenville, where he was employed for a time by a con-

struction company, and later took charge of the operation of certain automatic pumps at Dunean Mills. He continued his work at the latter place until March, 1930, at which time he was discharged because of epileptic convulsions. Appellant testified that he commenced having epileptic convulsions in August, 1928, and that he had had no convulsions prior to that date. That upon the advice of his family physician, Dr. J. T. Murray, he went to Atlanta in 1928, and was operated upon by Dr. Dowman, the operation being upon the same place on his head where he received the injury in 1914. A tumor was removed from his brain, but the operation did not have the desired effect, and appellant suffered from a recurrence of the convulsions, averaging as high as three a week. Several witnesses, near neighbors, friends, and employers of the appellant, testified that they had never seen appellant have a convulsion prior to August, 1928. This type of testimony, while not without probative value, must be classified as negative.

Dr. Dowman, the brain specialist, died before the commencement of this action. Dr. Murray, a witness for the defendant testified that he had been the family physician of the appellant since 1928, at which time he was called in to treat him for epileptic convulsions, which he diagnosed as being traumatic epilepsy, caused by an injury to the brain, and that in his opinion these convulsions are directly attributable to the injury which the 'defendant suffered to his head in 1914.

Dr. Goldsmith, a witness for the defendant, testified that the appellant was suffering from traumatic epilepsy, usually caused by an injury to the head, and that in his opinion the convulsions of the appellant are attributable to that injury. He further stated that in accordance with medical authorities epileptic convulsions may occur any time from the date of injury for a period of twenty years.

On cross-examination Dr. Murray testified that epileptic convulsions did not necessarily occur from every injury, that

there are causes for epilepsy other than injury, and further stated that the appellant's convulsions could arise from some other cause, but in his opinion it was very unlikely. On cross-examination Dr. Goldsmith also stated that many injuries take place which do not result in epileptic convulsions.

The evidence in the case and the brief of appellant point almost solely to the causal connection between the epilepsy and the blow received by the appellant to his head in 1914, except for certain testimony relating to heart trouble, which will be hereafter adverted to.

From a consideration of the evidence, it appears that certain pertinent and relevant facts are either admitted or are uncontradicted. These may be enumerated as follows: (1) The appellant is suffering from traumatic epilepsy, which results from an injury to the head affecting the brain; (2) such epilepsy may make its appearance at any time during twenty years following such injury; (3) appellant suffered a severe injury to his head in 1914, when a falling timber fractured his skull, which injury left the side of his head depressed at the point of the fracture, (4) in the opinion of the doctors who attended appellant, his epileptic convulsions are directly attributable to that injury; (5) in August, 1928, within six months from the issuance of the policy, appellant, upon the advice of Dr. Murray, who was his family physician, had a surgical operation performed on his head at the point of the fracture, by a brain specialist in Atlanta, in the hope that such operation would relieve the affliction from which he was suffering, and that a tumor was removed from his brain.

It must be remembered in a review of a judicial ruling granting a motion for a directed verdict that the question does not involve a determination of the weight of the evidence, but only whether there is any admissible and relevant testimony of substantial probative value tending to establish the essential elements of the com-

plaint; and in determining this question it is elementary that the testimony must be considered most favorably to the party against whom the verdict is directed.

The only testimony on the issue of causal connection between the epileptic convulsions and the head injury sustained by the appellant in 1914 is that of the two medical witnesses, one of whom, Dr. Murray, was the family physician of the appellant. A consideration of their testimony in conjunction with that of the appellant relating to the surgical operation on his head and the removal of the brain tumor makes the conclusion inescapable that the epilepsy resulted from the injury to the head sustained by the appellant prior to the issuance of the policy. There is no intimation or suggestion in the entire record that the plaintiff's disease could be attributed to any other specific cause. It is true that the medical witnesses testify that convulsions may arise from some other cause, and the brief of the appellant lays great stress upon this phase of their testimony which was brought out on cross-examination; however, there is no evidence in the record to which the epileptic convulsions might reasonably be referred or related other than to the specific head injury. The appellant offered no evidence, medical or otherwise, to controvert this medical testimony. To have submitted the case to the jury under these circumstances would have left them purely in the realm of surmise and conjecture.

We think the conclusion of the Circuit Judge that the evidence was susceptible of only the one reasonable inference that the epilepsy was the direct consequence of the injury to the head was inevitable and inescapable. There is no substantial conflict or dispute on this material phase of the case.

When only one reasonable inference, not just one inference, but one reasonable inference, can be deduced from the evidence, it becomes a question of law for the Court, and not a question of fact for the jury.

*Turner v. American Motorists Insurance Company,* 176
S. C., 260, 180 S. E., 55.

Appellant argues that where the question as to the
time when the disabling disease or condition oc-
curred is in dispute, and where the medical cause
or the causal injury antedates the policy, with the disease
manifesting itself after the issuance of the policy, an issue
is made for the determination of the jury. It is indisputable
that if there is a conflict of evidence, the case should be
submitted to the jury. The appellant calls to our attention
the case of *Turner v. Columbia National Life Insurance
Company,* 100 S. C., 121, 84 S. E., 413, 414. In that case
the plaintiff, under a health policy providing for disability
contracted while the policy was in force filed two proofs
of loss. The policy became effective on November 10th at
12 o'clock noon. In one proof of loss the insured stated that
his illness began about 2 o'clock p. m. on the same day the
policy was issued; and in the second proof of loss that it
began about noon on the effective date. The right of the
insured to recover depended upon proving that his disabil-
ity or disease was contracted while the policy was in force.
In the report of this case the Court said: "Dr. Ezell testi-
fied that, if he suffered from the aches and pains on Nov-
ember 10th, he had, in his opinion, contracted it before
that time, but on cross-examination said that he had got
the cause of the disease in his system, but that he had not
the disease, but contracted it and got it in his system. This
question was an issuable fact for the jury to determine as
to when he had the disease. The seeds of disease might
have been in his system and never developed, might have
laid dormant for a long time, and a change of climate or
want of care might have developed it. It is for the jury to
say, under all of the facts and circumstances, when he con-
tracted the disease."

In the present case, however, the causal connection be-
tween the epilepsy and the head injury presented no issuable

fact for the jury. The evidence, and the only reasonable and legitimate inferences flowing therefrom, point without deviation to the conclusion that his affliction resulted, not from latent seeds of disease, but from the external blow on the head as a substantive fact, which injury, it is admitted, was sustained prior to the issuance of the policy. We do not know, from the report of the case above cited, what facts and circumstances were testified to in addition to that of the medical testimony quoted. In this case there is no testimony of substantial probative force disputing or controverting the medical testimony as to this vital issue of causal connection.

It is next contended by the appellant that his total and permanent disability might be attributed to heart trouble, independent of the head injury sustained by him before the issuance of the policy of insurance. There is no support in the testimony upon which any legitimate inference might be based that the appellant's disability resulted from any disease of the heart. An examination of the record shows that the appellant did testify that he had a weak heart, and that it troubled him when he tried to work, but there is no evidence that his inability to continue to work in his accustomed manner was occasioned by any disease of the heart. This exception is overruled.

It is next contended that the trial Court erred in admitting in evidence over appellant's objection the preliminary report of Dr. Murray, which was filed by the appellant himself with the respondent in making his claim for disability. This report contains the statement with respect to the history of plaintiff's epileptic convulsions, that he "was struck on the head by a piece of timber on November 28, 1914—following he had two or three convulsions a year until August, 1928, at which time they began very frequently."

The introduction in evidence of this report was objected to upon the grounds that it was not proved that plaintiff made the statements contained therein, nor that he was pres-

ent when such statements were made, nor that he knew that such statements were contained in this preliminary report when it was submitted to the defendant, and further that such statements were hearsay.

The testimony shows that the proof of claim was upon one of the defendant's regular forms, given to the appellant upon his request. It consisted of a single sheet of paper. On one side was the "statement of claimant," and immediately underneath it were certain questions to be answered by appellant's last employer, and captioned, "To be completed by last employer." The appellant signed the "statement of claimant," and the employer's statement was signed by D. V. Feaster, of the Henry Construction Company, at the appellant's request. The back of the form is captioned, "Attending physician's certificate."

The appellant admits that he and his wife went to the office of Dr. Murray, and carried with them this paper so that he might answer the questions contained in the certificate, and he knew that Dr. Murray had signed the same. When Dr. Murray had filled in the answers to the questions on the form, it was given to the appellant, who then submitted it to Mr. Feaster, as above stated, after which he forwarded it to the respondent.

In order to comply with the provisions of the policy contract, it was necessary that the appellant submit this proof of his disability to the respondent. Without such compliance with the terms of his contract the appellant would have been in no position to bring this action.

It is conceded by the respondent that a declaration against interest to be admissible in evidence must have been made by the party against whom it is sought to be used, or if made by some one else in his behalf, it must have been made in his presence, or else with his knowledge or consent. Dr. Murray testified that this paper was brought to his office by the appellant and his wife, and that they were both in the room while he was eliciting information with reference to the appellant's ailment and the history of his illness, and

while he was writing down the answers to the questions contained in the statement. Upon cross-examination he stated that it was possible that the appellant might have stepped out of his office for a minute and returned while he was filling out the blank. And he further testified with reference to the information relating to the convulsions following the head injury that he was not positive whether the appellant or his wife answered that particular question, and he was unable to say positively whether appellant was acutally in the room when that statement was given to him. It was explained that the wife of the appellant was unable to attend the trial on account of sickness. The appellant in his examination did not deny having heard Mrs. Nalley give the doctor the information referred to. In addition to this, after this paper had been completed by Dr. Murray and signed by him, it was delivered to the appellant, who, as stated before, carried it to his employer, Mr. Feaster, and thereafter mailed it to the respondent. We think it sufficiently appears, to make this report admissible, that even if the appellant did not give this alleged information to Dr. Murray himself, concerning his epileptic seizures immediately following the head injury, he must be held, under the circumstances stated, to have had knowledge thereof and consented thereto; and in effect to have ratified the same. The Circuit Judge committed no error in admitting this report in evidence.

All exceptions have been duly considered.

It is the judgment of this Court that the judgment of the Circuit Court, be, and the same hereby is, affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.