14607

HOPE v. NEW YORK LIFE INS. CO.

(195 S. E., 110)

May, 1937.

*Messrs. Thomas, Lumpkin & Cain* and *Hart & Moss,* for appellant;

*Messrs. Finley & Spratt* and *R. B. Hildebrand,* for respondent,

January 26, 1938.

The opinion of the Court was delivered by Mr. Justice Bonham.

The New York Life Insurance Company issued its policy whereby it insured the life of Robert Meek Hope in favor of his wife, Edna C. Hope, in the sum of $1,000.00, with a provision of double indemnity if the death of the insured resulted "directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means. * * * Double indemnity shall not be payable if the insured's death resulted * * * from committing an assault or felony."

December 23, 1935, the insured became engaged in an altercation with Tom Joy, in which he suffered a knife wound at the hands of Joy, from which he died.

The insurance company paid the face of the policy, $1,-000.00, but refused to pay the double indemnity, $1,000.00, and this action was brought. It was tried by Judge Gaston, with a jury, and resulted in a verdict in favor of plaintiff.

The defense, in brief, was that the insured did not come to his death from external, violent, and accidental means, but from and while he was committing an assault and felony, and that death from such cause was expressly excluded from the terms of the double indemnity benefit, and was a risk not assumed by the defendant.

There was much testimony relating to the fatal occurrence; its origin, renewal, and the final affray. A brief summary of the encounter may be thus stated:

It was two days before Christmas; a number of men were met in the evening at the filling station and store of Mr. Campbell at Tirzah; R. Meek Hope bought a Roman candle which he fired toward a group outside the store; a ball from it is alleged to have struck Tom Joy in the face, and an altercation arose between the two of them in which each of them drew his knife; others intervened, and each party shut up his knife and put it in his pocket. Tom Oates said: "You boys stop your foolishness, put up your knives and fight it out fair." Hope had advanced to the door of the store; he threw off his overcoat and said, "We'll settle this thing now." He advanced upon Joy and struck him a blow with his fist which felled him to the ground, as one witness said, "like a beef." In the ensuing melee, Joy cut Hope in the side. From the pneumonia which ensued, Hope died.

At the close of the testimony for the plaintiff, the defendant moved for a nonsuit on the grounds that plaintiff had failed to offer testimony sufficient to show that the death of the insured resulted from bodily injuries effected wholly through external, violent, and accidental means; and that the testimony offered by plaintiff conclusively showed that the death of the insured resulted from external means which were the result of an assault or felony committed by the insured.

The motion for nonsuit was denied.

At the conclusion of all the testimony, the defendant moved for the direction of a verdict on the grounds, that: The only reasonable inference to be drawn from the evidence is that the death of the insured resulted from the commission of an assault or felony; from which cause the coverage of double indemnity was expressly excluded from the policy.

The motion was overruled.

After the rendering of the verdict in favor of the plaintiff, defendant made a motion for a new trial on the grounds covered by the motions for nonsuit and directed verdict; because of error of the Court in ruling and holding that an assault committed by striking with the fists was not such an assault within the contemplation of the parties as would relieve the insurer from the payment of the double indemnity, where the insured's death resulted after and as a direct consequence of such assault; because the jury did not follow the instructions of the Court to the effect that if they found from the testimony that the death of the insured resulted from committing an assault or felony, their verdict must be for the defendant, it being uncontradicted that the death of the insured did result from committing an assault; because the verdict of the jury was contrary to the principles of law charged to them to the effect that if they found that the assured was the aggressor and provoked the difficulty which resulted in his death, the company would not be liable, and, under the uncontradicted testimony, the insured was the aggressor and did provoke the difficulty which resulted in his death.

This motion was refused.

The defendant appeals upon exceptions which embody the grounds of the several motions made and refused.

Appellant's counsel elect to argue their appeal under five heads, which we reduce to three propositions, viz.:

1. Was it error to refuse the motion for nonsuit?
2. Was it error to refuse the motion for directed verdict?
3. Was it error to refuse the motion for new trial?

The questions whether there was error in refusing the motions for nonsuit and for directed verdict may be discussed together.

In the case of *Linnen v. Commercial Casualty Co.,* 152 S. C., 450, 150 S. E., 127, 128, Mr. Chief Justice Stabler, for the Court, said: "Under the pleadings, the plaintiff made out a *prima facie* case by proof of the policy of insurance and that the insured died from being stabbed with a knife;

the presumption of law being that the wound was accidently inflicted, and was not the result of an illegal act of any one. The burden was then shifted to the defendant to show, as pleaded by it, that the death of the insured was brought about by injuries intentionally inflicted upon him. * * * In cases like this, before a verdict for the defendant can be properly directed, the evidence must not only support the inference that the person charged with the killing intended the consequence of his act, but must also exclude any other inference. * * * In such cases it seldom happens that, under the testimony adduced, it is proper for the Court to say, as a matter of law, that the defendant has sustained the burden cast upon it—in nearly every instance the jury is the proper tribunal to draw inferences from the testimony."

In the case of *Bounds v. W. O. W.*, 101 S. C., 325, 85 S. E., 770, 772, Ann. Cas., 1917-C, 589, Mr. Justice Gage announced the same principle. Both the *Linnen* and this *Bounds case* were insurance cases with special indemnity features. Mr. Justice Gage said: "Finally, we have not discussed the many cases from other jurisdictions cited by counsel. Some of the courts go a long way towards assuming to decide for themselves whether a particular act is a violation of law. They fully sustain the contention of the defendant. Others of them take the view which we have come to, that where the facts are at all in reasonable dispute, a jury must decide whether in a particular case the policy holder 'died in consequence of the violation of the laws of the state.' "

Respondent's counsel cite in their brief the case of *Gilman v. New York Life Insurance Co.*, 190 Ark., 379, 79 S. W. (2d), 78, 79, decided by the Supreme Court of Arkansas, construing the same provision of a policy as is contained in the one here under review. The case is reported in 97 A. L. R., 755. The provision of indemnity in that policy and in this one is: "That such double indemnity shall not be payable if the insured's death resulted from * * * committing an assault or felony."

Gilman went into the store to collect a debt from Walker; he took hold of Walker's shirt, who jerked away from him, drew a pistol and shot him. The Court said: "It is the settled law in this state that proof of death of an insured from injuries received by him raises a presumption of accidental death, within the meaning of an insurance clause insuring against injury by external, violent, and accidental means, and this presumption will continue until overcome by affirmative proof to the contrary on the part of the insurer."

In the case of *Occidental Life Insurance Company v. Holcombe,* a Texas case, reported in 5 Cir., 10 F. (2d), 125, 127, in holding that there was no liability under the contract, the Court said:

"It may be conceded that under certain circumstances an unlawful killing of the insured by another is to be considered accidental. The rule as laid down by the weight of authority, and of which the decisions quoted below are illustrative, may be stated as follows:

"Where the insured is innocent of aggression or wrongdoing, and is killed in an encounter with another, his death is considered accidental, within the meaning of the usual accident policy. *Interstate Business Men's Accident Ass'n v. Lester,* 257 F., 225, 168 C. C. A., 309. And even where the insured is the aggressor, if he could not reasonably anticipate bodily injury resulting in death to himself at the hands of another, the beneficiary may recover. *Employers' Indemnity Co. v. Grant* (C. C. A.), 271 F., 136, 20 A. L. R., 1118. *But where the insured is the aggressor, and knew, or should have anticipated, that the other might kill him in the encounter, the death is not to be considered accidental. Taliaferro v. Travelers' Protective Ass'n,* 80 F., 368, 25 C. C. A., 494." (Italics added.)

In the *Holcombe case,* above, the Court held that the death was not accidental because the facts showed beyond all doubt that Green and Holcombe engaged in an encounter with pistols under circumstances which admitted of but one conclusion, that one or both would receive serious injury.

Holcombe was killed and Green was seriously wounded, and later died.

The view preferred and adopted in this State is that ■■ one insured, even if he be the aggressor in an encounter in which he is injured or killed, does not forfeit his insurance if he could not reasonably anticipate that he would receive bodily injury or be killed; and that ordinarily makes a question for the jury. However, if only one reasonable inference can be drawn from the testimony, then it becomes a question of law to be passed upon by the Court. See *Turner v. American Motorist Ins. Co.*, 176 S. C., 260, 180 S. E., 55, and cases therein cited; *Thackston v. Shelton,* 178 S. C., 240, 182 S. E., 436; *Nalley v. Metropolitan Life Ins. Co.*, 178 S. C., 183, 182 S. E., 301; *Cubbage v. Roos,* 181 S. C., 188, 186 S. E., 794; *Hunsucker v. State Highway Department,* 182 S. C., 441, 189 S. E., 652; *Williamson v. Southern Ry. Co.*, 183 S. C., 312, 191 S. E., 79.

The testimony discloses that in the first altercation ■ between the deceased and Joy, each of them drew his knife. In the second encounter, unprovoked by Joy, and the one in which Hope received the wound resulting in his death, Hope was the aggressor. With his fist, he felled Joy while Joy was standing with his hands in his pockets. Hope undoubtedly knew that Joy had a knife, and there was every reason for him to anticipate that when he attacked Joy, as he did, Joy would again resort to his knife and he would in return receive serious bodily injury or be killed. It would therefore appear that the only reasonable inference to be drawn from the evidence is that the death of the insured resulted from the commission of an assault, from which cause the coverage of double indemnity was expressly excluded from the policy.

· It follows that the trial Judge was in error in not directing a verdict for appellant.

Having reached this conclusion, it becomes unnecessary to pass upon the other question.

Reversed, and remanded for the purpose of entering judgment for defendant below.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.