## 17381

Dorsey ROBINSON, Respondent, v. CAROLINA CASUALTY IN-
SURANCE COMPANY, Appellant

(101 S. E. (2d) 664)

*T. Kenneth Summerford, Esq.,* of Florence, *for Appel-
lant,*

*John M. Scott, Esq.,* of Florence, *for Respondent,*

January 16, 1958.

Moss, Justice.

The appellant, Carolina Casualty Insurance Co., issued to Dorsey Robinson, the respondent, its contract of insurance, by the terms of which it agreed to pay to the insured the sum of $25.00 as weekly indemnity for loss incurred as a result of accidental bodily injury.

This action was instituted to recover $275.00, representing disability under the terms of the policy in question for a period of eleven weeks. The respondent asserted, and the appellant does not deny, that he was shot and fully disabled for the period in question. The appellant asserts, by way of answer, that under the terms of the policy the word "injury" means bodily injuries sustained solely by accidental means, and that the respondent having been intentionally shot by one Susie Mae Sumter, the resulting injury was not covered under the terms of the policy.

This action was tried, by consent, before the Honorable G. Badger Baker, Resident Judge of the Twelfth Circuit, without a jury. The trial resulted in an order favorable to the respondent. The only issue raised below and in this Court is whether or not the cause of the disability of the respondent was accidental.

This is an action at law, tried by the Judge without a jury. His findings of fact have the same force and effect as the verdict of a jury; unless he has committed some error of law leading him to an erroneous conclusion, or unless the evidence is reasonably susceptible of the opposite conclusion only, his findings of fact must be accepted by this Court.

The trial Judge found that the injury to the respondent occurred on December 1, 1956, at the home of Susie Mae Sumter. One James, a cousin of the respondent, lived in one side of a duplex house, the other portion being occupied by Susie Mae Sumter. The Sumter woman was on the James side of the house when the respondent arrived. She left to go to her side of the house and the respondent followed her a few minutes later. Susie Mae Sumter and the respondent both testified that they had been going together two or three weeks and he had visited her on a number of occasions. She testified that she invited the respondent into her home, which consisted of three rooms, the living room in the front, the bedroom in the middle and the kitchen in the rear. The respondent entered the house by way of the kitchen and sat down in the living room. The daughter of Susie Mae Sumter wanted to go to a barbecue and the respondent was asked to go along with Susie Mae Sumter and her daughter but he refused to go. He was told to leave by the Sumter woman so that they could dress for the barbecue. The respondent was slow in leaving and the Sumter woman testified that she picked up her twenty-two rifle to "scare him". He testified that he was leaving and did not see the rifle until he turned when he reached the door and she was right behind him and the rifle went off. The bullet went through the fleshy part of his left arm, then into his body at the shoulder, glanced off a bone and went into his stomach. Susie Mae Sumter testified that she had no intention of shooting the respondent and that he did not have any reason to believe that she would shoot him. She admitted on cross examination that the respondent had slapped her "but it did not hurt her".

The appellant produced in its behalf only one witness. This witness was a City Detective in Florence who investigated the shooting. He testified that the respondent told him that Susie Mae Sumter shot him. He said that Susie Mae Sumter was not mad at the respondent and that when he asked her "Why did you shoot him?" she replied, "She did not know the rifle went off, but she got it for him to leave".

The trial Judge found that there could be a diversity of opinion as to whether the discharge of the gun was intentional, but the only reasonable inference to be drawn from the entire testimony is that the injury to the respondent was not the result of misconduct or an assault by him, but unforeseen so far as he was concerned.

In the case of *Linnen v. Commercial Casualty Co.,* 152 S. C. 450, 150 S. E. 127, 128, it was stated:

"Under the pleadings, the plaintiff made out a *prima facie* case by proof of the policy of insurance and that the insured died from being stabbed with a knife; the presumption of law being that the wound was accidentally inflicted, and was not the result of an illegal act of anyone. The burden was then shifted to the defendant to show, as pleaded by it, that the death of the insured was brought about by injuries intentionally inflicted upon him, and that its liability was thereby avoided to the extent indicated by the quoted provision of the policy. With this burden thus placed on the defendant, should the trial judge, under the testimony offered, have directed a verdict for the company, thereby holding that the burden was sustained, as a matter of law?

"In cases like this, before a verdict for the defendant can be properly directed, the evidence must not only support the inference that the person charged with the killing intended the consequence of his act, but must also exclude any other inference. The testimony must not only be consistent with the theory that the death of the insured resulted from an intentional act of a third person, but must also be inconsistent with a nonintentional injury. Hence, in such cases it seldom

happens that, under the testimony adduced, it is proper for the court to say, as a matter of law, that the defendant has sustained the burden cast upon it—in nearly every instance the jury is the proper tribunal to draw inferences from the testimony."

In the case of *Jennings v. Clover Leaf Life & Casualty Co.*, 146 S. C. 41, 143 S. E. 668, 670, this Court said:

"The solution of the question is dependent upon the intention of the person making the assault.

"It is held in the case of *Travelers' Protective Ass'n v. Fawcett*, 56 Ind. App. 111, 104 N. E. 991, that 'where the issue is whether an injury to insured in an accident policy was intentionally inflicted by a third person, the intention of the third person is alone controlling.' "

And again from *Jennings v. Clover Leaf Life & Casualty Co.*, this Court said:

"Annotation, 20 A. L. R., 1123, deduced from a study of all the cases from all the courts of the land, reads as follows: 'It is a well-established rule that where insured is intentionally injured by another, and the injury is not the result of misconduct or an assault by the insured, but is unforeseen in so far as he is concerned, the injury is accidental within the meaning of accident policies,' citing various authorities by the federal Supreme Court and seventeen state Supreme Courts."

In the case of *Hope v. New York Life Insurance Company*, 186 S. C. 85, 195 S. E. 110, 112, the following rule was stated:

"The view preferred and adopted in this state is that one insured even if he be the aggressor in an encounter in which he is injured or killed, does not forfeit his insurance if he could not reasonably anticipate that he would receive bodily injury or be killed; and that ordinarily makes a question for the jury. However, if only one reasonable inference can be drawn from the testimony, then it becomes a question of law to be passed upon by the court. See *Turner v. American*

*Motorist Ins. Co.,* 176 S. C. 260, 180 S. E. 55, and cases therein cited; *Thackston v. Shelton,* 178 S. C. 240, 182 S. E. 436; *Nalley v. Metropolitan Life Ins. Co.,* 178 S. C. 183, 182 S. E. 301; *Cubbage v. Roos,* 181 S. C. 188, 186 S. E. 794; *Hunsucker v. State Highway Department,* 182 S. C. 441, 189 S. E. 652; *Williamson v. Southern Ry. Co.,* 183 S. C. 312, 191 S. E. 79."

In 26 A. L. R. (2d), at page 402, the law is summarized as follows:

"While general language used in some of the decisions might be taken to indicate the adoption of a harsher rule, the consensus of the cases seems to be that the mere fact that a person insured against accidental injury or death voluntarily and wrongfully assaulted another will not be sufficient to characterize as nonaccidental all possible injuries which he receives in the course of or as a consequence of his attack, but that such injuries may be regarded as accidental unless they were a natural or probable result of the insured's action, reasonably foreseeable by him or by a reasonably prudent man in his position."

We conclude that it was for the trial Judge to determine, based upon the evidence before him, whether or not the respondent was injured by the intentional act of Susie Mae Sumter. It was a question for the trial Judge to determine whether the respondent should have foreseen that his conduct, as revealed by the evidence, would probably result in his injury. The trial Judge has determined these issues in favor of the respondent. There is evidence sufficient to support these findings.

The judgment of the lower Court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.