**Arthur SHARPE, Wanda Sharpe and Mississippi Farm & Home Board, Plaintiffs-Appellants,**

v.

**EMPLOYERS MUTUAL CASUALTY COMPANY, Defendant-Appellee.**

No. 86–4108.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1987.

William C. Walker, Jr., University Law Center, University, Miss., Ronald S. Cochran, William L. Denton, Biloxi, Miss., for plaintiffs-appellants.

Joe W. Hobbs, Jackson, Miss., for defendant-appellee.

Before GEE, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This diversity case involves the claims of appellants Arthur and Wanda Sharpe against their insurance company, appellee Employers Mutual Casualty Company (Employers). Appellants filed a claim for damage to their roof caused by wind and hail, and appellee denied the claim. Appellants sued, and in a jury trial were awarded actual damages in a stipulated amount plus $125,000.00 in punitive damages. The district court entered judgment notwithstanding the verdict setting aside the award of punitive damages but leaving intact the award of actual damages. The Sharpes brought this appeal.

## I.

Appellants live in Philadelphia, Mississippi, in a home that was insured by appellee in January, 1982. It is undisputed that the insurance policy covered any damage to appellants' roof caused by hail or wind, and did not cover damage to the roof caused by normal wear and tear, deterioration, or poorly-made shingles.

On March 10, 1982, Employers' representative Cook conducted an underwriting inspection of the Sharpes' roof in order to verify its insurability. At trial the issue was raised as to whether he examined the roof over the rear of the house. Cook testified: "I don't normally look at a roof in the back unless it's required." In this case, he "looked at [the roof] from the ground level from near the house. Of course, I couldn't see the whole roof from the back.... I didn't observe anything wrong with the roof from where I saw it." Cook filed a report with appellee in which he described the condition of the roof as "good."

Three weeks later, on April 3, 1982, a tornado struck in the vicinity of appellants' home, and the next day the Sharpes found water damage in various places inside their home.[1] Mr. Sharpe testified that he immediately reported the damage to Employers' agent, the Mitchell Agency. On April 10, 1983, a hailstorm struck Philadelphia, after which, appellants testified, their roof leaked even more. Mr. Sharpe claims that he again notified the Mitchell Agency that damage had occurred.

Appellee testified that the Mitchell Agency was not notified by appellants of any damage until June 1, at which time the agency relayed the report to appellee. On June 4, appellee's agent Martin inspected the Sharpes' home. His report stated that there was no damage to the roof caused by hail or wind. Rather, he asserted that parts of the roof over the back side of the home were in a very deteriorated condition due to wear and tear and, possibly, to poorly-made shingles. He testified that the wear and tear he saw on the back portion of the roof in June would have become evident gradually, and therefore should have been visible when Cook inspected the house in March. Martin stated that "You can see the deterioration from the south side of the house. You can see that from the ground." When asked if an insurance inspector could have seen the damage without climbing onto the roof, Martin replied, "I'm sure he could." On June 7, Martin wrote appellants that he "found no damage to your roof from wind or hail. However, I do agree that you need a new roof on your house ..."

On June 29, appellee sent a memorandum to its agent, the Mitchell Insurance Agency, requesting that the agency "personally inspect" appellants' home to check Martin's report that the roof was worn out. The agency responded with a letter on July 15, asking appellee to "recheck this claim." The letter stated that an investigation by Breland Building Supply on May 31 had found "hail damage and some wind damage."[2] In an internal memo, the agency noted that "[t]his claim has been re-opened. There was hail damage to the roof, and we have requested that Mr. Martin reinspect this roof."

In response to the Mitchell Agency's letter, appellee hired an independent agent, Mr. Jordan, to inspect the roof. Jordan

---

**1.** The parties do not dispute that appellants' insurance policy covered interior water damage, regardless of the cause. Appellee estimated that the leaking roof caused $225.00 in interior water damage to appellants' home, and therefore offered to settle appellants' claim for that amount less the policy's $100.00 deductible. Appellants refused to cash the $125.00 check they received from appellee, both because they claimed that the interior of the home suffered at least $425.00 in damages, and because they asserted that the damage to the roof was compensable under the insurance policy. Because appellants offered no proof at trial as to the interior water damage, the district court ruled that $125.00 was a proper settlement for that claim. The $125.00 amount is not at issue and was not included in the stipulated damages award of $2,600.00, which covered only damage to the roof.

**2.** Breland's agent also concluded, however, that the roof was "in an aging state."

was not told of the conclusions of previous inspectors, but he knew that the inspection was for purported hail and wind damage. On July 27, Jordan inspected the roof. He concluded that the damages was not due to hail or wind but to deterioration from wear and tear. Jordan also stated that mere wear and tear could not account for the condition of the house in July if it truly had been in good condition in March.

In April 1983, appellants filed suit against appellee on their claim for hail and wind damage. In May, 1983, Breland Building Supply repaired the Sharpes' roof, and disposed of all the shingles it replaced. The parties to the lawsuit stipulated that the alleged contract damages were $2,600.00, so the only issue at trial was whether the damage to the roof was caused by hail and wind or by wear and tear. The jury found that the damage was caused by hail and wind, and awarded appellants the stipulated amount of $2,600.00. The jury also considered whether appellee had any "arguable reason" for denying appellants' claim. Finding no such reason, the jury awarded appellants $125,000.00 in punitive damages.

Appellee filed a motion for judgment n.o.v. to set aside the punitive damages award. Finding that the evidence "presented in the light most favorable to plaintiffs ... is 'strongly and overwhelmingly' in favor of defendant," the district court granted the motion for judgment n.o.v., 626 F.Supp. 376, and entered a judgment for appellants in the amount of $2,600.00. Appellants subsequently filed this appeal.

## II.

Appellants claim that the district court erred in granting appellee's motion for a judgment n.o.v. setting aside the jury's punitive damages award.[3] In passing on such a motion, the trial court must view the evidence in the light most favorable to the party opposing it, giving that party the benefit of all reasonable inferences in its favor. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969). A judgment n.o.v. should only be entered when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Id.* at 374. "The standard of review at the appellate level is the same. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2524 (1971)." *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 841 (5th Cir.1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976).

Of course, the evidence in this case can only point in favor of a particular party as it relates to the substantive legal requirements for recovery of punitive damages. Appellants and appellee agree that the applicable Mississippi law on the issue of punitive damages is found in three recent cases, *Aetna Casualty & Surety Co. v. Day*, 487 So.2d 830 (Miss.1986), *State Farm Fire & Casualty Co. v. Simpson*, 477 So.2d 242 (Miss.1985), and *Blue Cross & Blue Shield v. Campbell*, 466 So.2d 833 (Miss.1984). These cases state stringent requirements for the recovery of punitive damages in the nonpayment of an insur-

3. Appellee argues that the issue of punitive damages should not have been submitted to the jury in the first place because under Mississippi law a judge must review the evidence to determine whether the insurance company had a "reasonably arguable basis" for denying a claim before submitting the issue of punitive damages to the jury. *Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell*, 466 So.2d 833, 842 (Miss.1985). Mississippi law notwithstanding, we have recently held that:

the relationship between the judge and jury in a federal civil proceeding is a matter of federal, not state, law. *Plantation Key Developers,*

*Inc. v. Colonial Mortgage Co. of Indiana, Inc.,* 589 F.2d 164, 171 (5th Cir.1979). The standard in this circuit for determining whether the evidence is sufficient to create a jury question is the familiar one set out in *Boeing,* and the standard does not change because the case is in federal court on the basis of diversity jurisdiction.

*Jones v. Benefit Trust Life Insurance Co.,* 800 F.2d 1397, 1400 (5th Cir.1986). Under the *Boeing* standard, it was within the district court's discretion to send the issue of punitive damages to the jury.

ance claim. For example, in *Aetna Casualty*, the Mississippi Supreme Court set out very plainly the burden that must be met by a party claiming punitive damages:

> To recover punitive damages from an insurer for amounts over and above policy benefits an insured must prove by a preponderance of the evidence either (1) that the insurer acted with malice or (2) that the insurer acted with gross negligence or reckless disregard for the rights of others.

*Aetna Casualty*, 487 So.2d at 832. The court added that the "absence of an 'arguable reason' [to deny a claim] does not necessarily establish that the insurer acted with malice or with gross negligence or reckless disregard for the insured's rights." *Id.* at 833.[4]

Under the substantive guidelines of these Mississippi punitive damages standards, then, we must review the evidence to determine whether the facts and inferences establish that appellee acted with malice, gross negligence, or reckless disregard for appellants' rights.

### III.

■ We agree with the district court that the evidence cannot support the jury verdict awarding punitive damages. Appellee sent two representatives to inspect the roof independently. Each concluded that no hail or wind damage had occurred. Appellee's field adjuster, Mr. Martin, testified that he saw no wind or hail marks on the roof shingles, and he provided a reasonable and coherent alternative explanation for the damage to the roof. Martin noted that he did not find any hail markings on

the top of the ridges of the roof where such markings can often be detected easily. He described his method of inspection as including a search for stress cracks in the shingles, for broken or missing tabs on the edges of the shingles, and for other indicia of storm damage. He testified that these inspections produced no evidence of wind or hail damage, but did produce evidence of age and deterioration.

The independent claims adjuster, Mr. Jordan, similarly inspected appellants' roof to determine the cause of the damage. Like Martin before him, he looked for cracked shingles, cracked or indented tabs, and other evidence of wind or hail damage. Jordan testified that he discussed his conclusion that there was no such damage with Mr. Sharpe, who remarked that "[Jordan] had [his] opinion and [Sharpe] had his and it was different." Mr. Sharpe specifically pointed out to Jordan what Sharpe felt was evidence of wind and hail damage, but Jordan "saw no [such] damage there."

Appellee's local claims manager, Mr. Bills, testified that he hired Jordan, an independent claims adjuster, to assess the damage to appellants' roof in order "to double-check and be sure that we had not missed something and that if they did have hail damage or wind damage, certainly I wanted it paid; and I wanted to be sure that they did not have it." When challenged as to why he did not simply "stick with" Martin's original report instead of hiring a second adjuster, Bills replied, "Because I wanted to give the insured benefit that if by chance [Martin] had missed something or if there was any doubt in it, then I would have given Mr. and Mrs. Sharpe the benefit of that doubt."

---

**4.** On other occasions, the Mississippi Supreme Court has phrased the requirements for recovering punitive damages as follows:

"Punitive damages are not recoverable for breach of contract unless such breach is attended by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort." *Lincoln National Life Insurance Co. v. Crews*, 341 So.2d 1321, 1322 (Miss.1977).

"In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evidencing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." *Standard Life Insurance Co. v. Veal*, 354 So.2d 239, 247 (Miss.1978) (quoting *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 150, 141 So.2d 226, 233 (1962)).

Appellants argue that appellee's malice, gross negligence, and reckless disregard for their rights can be inferred because the refusal to pay their claim was inconsistent with appellee's own report that the roof was in good condition in March. But a cursory or inadequate inspection as to insurability by appellee's field representative, Mr. Cook, alone certainly is not enough to establish the grounding for punitive damages in view of the later impartial evaluations. In this instance, Cook had followed his normal procedure, viewing appellants' roof from the ground near the house, from which point he could not see parts of the back portion of the roof. As apparently was customary for an underwriting inspection, he did not climb onto the roof to inspect it.

The post-claim inspections made by Mssrs. Martin and Jordan, as well as by the Mitchell Insurance Agency and Breland Building Supply, were more detailed and accurate than the inspection conducted by Mr. Cook. Appellee's reliance on these later inspections by its agents was not malicious or reckless, although the jury obviously found it mistaken. We must conclude that evidence adequate to establish malice, gross negligence, and reckless disregard for appellants' rights is not to be found in this record. The jury's verdict granting appellants $125,000.00 in punitive damages is not sustainable.

## CONCLUSION

The jury verdict awarding actual damages for wind and hail damage is supported by the record and must be affirmed. The district court properly found the proof inadequate to support a jury verdict that appellee acted with malice, gross negligence, or reckless disregard for the rights of appellants in denying their claim for the wind and hail damage. The judgment notwithstanding the verdict overturning the verdict awarding punitive damages was properly granted.

AFFIRMED.