**NEW ORLEANS FURNITURE MANU-FACTURING COMPANY, Plaintiff-Appellee,**

v.

**GREAT AMERICAN INSURANCE COMPANY, Defendant-Appellant.**

No. 27332
Summary Calendar.

United States Court of Appeals
Fifth Circuit.

July 29, 1969.

Rehearing Denied Aug. 26, 1969.

Francis T. Zachary, Carroll H. Ingram, Hattiesburg, Miss., for appellant.

Bernard Callender, Maurice Dantin, Columbia, Miss., for appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge:

■ On this appeal, whether an individual was within the coverage of a fidelity insurance policy is the sole substantive issue. Counsel for the parties have filed unusually excellent briefs. Accordingly, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place it on the Summary Calendar and to notify the parties in writing: Rule 18, this Court. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804.

More specifically, a jury found and the District Court adjudged that the Great American Insurance Company is indebted to the New Orleans Furniture Manufacturing Company [of Columbia, Mississippi] for the loss of $13,577.20, sustained by reason of the failure of Max Ostrow to remit that amount after collecting it for New Orleans. The Insurance Company says that it should have been granted a directed verdict on the issue of liability because the evidence failed to show that Ostrow was an employee within the terms of the insurance policy. It is secondarily argued that the jury was inadequately instructed concerning policy coverage of accounts receivable. Finally, it is urged that if Ostrow was included in the policy the evidence failed to prove a loss by fraudulent or dishonest acts.

We affirm the Judgment of the District Court.

## 1. The Facts.

The policy, Great American No. SR 29, defined an employee as

"any natural person (except a director or trustee of the Insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the Insured's business during the Policy Period and whom the Insured compensates by salary, wages, or commissions and has the right to govern and direct in the performance of such service, but does not mean any broker, factor, commission merchant, consignee, contractor, or other agent or representative of the same general character".

The facts of Ostrow's service, stated in the light most favorable to the plaintiffs, in view of the verdict of the jury, may be summarized as follows:

In August, 1959, Max Ostrow began selling merchandise in Miami for New Orleans Furniture. At first, he was paid a 5% commission, but in March, 1960, a warehousing operation was set up in Miami. Under this procedure Ostrow was paid an additional 4% fee (later 5%) to cover rent, labor, and overhead for the warehouse.

Ostrow generally sold on credit. Unvaryingly, he had to obtain permission from the company to make a credit sale. Then he would close the sale. New Orleans would ship the merchandise and bill the customer direct. Ostrow received his monthly commission check, regardless of whether collection had been made on the credit sale.

Ostrow was also authorized to make cash sales. On these he collected the cash and remitted the money to New Orleans Furniture. As in the credit-approved transactions, compensation was made by monthly commission check.

Finally, a third procedure was devised for sales outside the United States, primarily to the Bahamas. On shipments to Nassau, Ostrow would ship the merchandise, attaching a bill of lading and a sight draft payable to him. Upon receipt of the proceeds of the draft he was

required to remit the entire proceeds to New Orleans Furniture, without deduction of the commission. The Company directed that he be the payee of the drafts so that collections from the Bahamas could be facilitated.

Although New Orleans carried a ledger sheet for Ostrow Sales Company, the name in which Ostrow did business, Max Ostrow's name as an individual did not appear on the Company records. There were no employee records in his name, and the Company paid no social security or withholding tax on him. Although not by name, the Company did carry workmen's compensation on Ostrow. There was testimony that he was included (but not by name) in the Company census of eight outside salesmen in the insurance policy.

While the Company did not superintend Ostrow's every move, it did exercise fairly extensive control in addition to the absolute control of his credit sales. The sales department frequently gave him names of prospects to call on and also instructed him to service complaints. Further, Ostrow was not at complete liberty to order as much merchandise as he wanted or to order exactly the kind he wanted. The Company imposed an $11,000 limit on shipments to him and often made variances from his requests for merchandise to sell out of the warehouse. Adherence to Company list prices was expected of Ostrow and at times corrections were made by the Company to reflect this policy. Where Ostrow departed from the Company price schedule, it was done without its knowledge or approval and would have been grounds for dismissal had it been discovered. The Company maintained an inventory control as to the furniture in the warehouse awaiting sale.

In September, October, and November, 1965, some thirteen sales were made by Ostrow to customers in the Bahamas, involving $17,577.20. Instead of forwarding the proceeds of the drafts to New Orleans Furniture, Ostrow kept the money. Subsequently one $4,000 pay-

ment was obtained from him by a Company official, reducing the loss to $13,-577.20. At the time of this loss the Great American Insurance Company policy, including "Employee Dishonesty" coverage, was in force.

Great American declined to pay the claim and this suit was brought. At the conclusion of the plaintiff's case and again at the conclusion of all the proof the defendant moved for a directed verdict, asserting that the proof showed Ostrow to have been a factor rather than an employee and that no loss was shown of a dishonest or fraudulent character. The motion was denied. The jury verdict was for the Company in the amount of $13,577.20, plus legal interest from the date of the refusal to pay to the date of the trial.

## 2. The Coverage.

█ In reviewing the verdict, two precautions are to be observed. One is that we cannot weigh the evidence and set aside the verdict either because the jury could have drawn other conclusions or because we might feel that an opposite result would have been the more reasonable, Tenant v. Peoria & P. U. Ry., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944). Secondly, the Supreme Court of Mississippi has repeatedly held that if the terms of an insurance policy are reasonably susceptible to two interpretations, the one sustaining indemnity must prevail, e.g., Aetna Life Insurance Company v. Evins, Miss., 199 So.2d 238 (1967).

█ So, the inquiry is whether the finding of employee status within the terms of the policy is supported by substantial evidence, Boeing v. Shipman, 5 Cir., 1969, 411 F.2d 365. From the facts hereinabove recited we answer in the affirmative. The District Court, therefore, committed no error when it denied the directed verdict. We are particularly impressed by the consideration that New Orleans, in fact, had the right to exercise (and did exercise) total control over the sales and collections in the Bahamas, out of which the loss arose.

For years Ostrow consistently followed the controls to the letter. It was not until the occurrence of a tragic illness in his family that he failed to send on the collections. The record shows that he admitted he should have sent the money, and contritely begged forgiveness. See Wade v. Traxler Gravel Company, 232 Miss. 592, 100 So.2d 103 (1958). "[T]he right to control rather than the fact that employer does control that determines the status of the parties".

A *fortiori*, if, as the jury found, Ostrow was "in the regular service of the insured's business during the policy period, was compensated by the insured in the form of commissions" and the company had "the right to govern and direct" him in the performance of such services, the exclusion was inapplicable and New Orleans was entitled to recover.

The issue was submitted to the jury in plain, unmistakable terms, leaving them to decide under the evidence whether Ostrow was an employee or a factor. The jury could not have misunderstood the controversy. The verdict, supported by substantial evidence, ends the lawsuit.

### 3. The Instructions.

We have critically examined the refusal of certain instructions requested by the defendant in support of its theories of the case. Eschewing a prolonged description of the dissection, we are of the opinion that some of the refused instructions lacked evidentiary support while others were adequately given in different language, addressed to the same issue or subject matter. In other words, while the appellant would naturally have preferred the use of its language, the jury charge was sufficiently clear and comprehensive.

### 4. The Proof of Loss.

The agreed pre-trial order, paragraph II, stated that the parties agreed that "the loss" occurred. That issue, therefore, was waived in the court below and could not be pursued here. Rule 16, Federal Rules of Civil Procedure; United States v. Hougham, 364 U.S. 310, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960). The record is replete with evidence of the nature of the loss. It was within policy terms.

Affirmed.