263 So.2d 749 (1972)
Jessie B. TAYLOR
v.
INSURANCE COMPANY OF NORTH AMERICA.
No. 46731.
Supreme Court of Mississippi.
June 12, 1972.
*750 Stephen L. Beach, Roland C. Lewis, Jackson, for appellant.
Watkins & Eager, H.H. Whitworth, Elizabeth Hulen, Jackson, for appellee.
RODGERS, Presiding Justice.
The appellant, Mrs. Jessie B. Taylor, brought suit against the appellee, Insurance Company of North America, on a contract of insurance in which appellant's husband Ed C. Taylor was the insured under a master policy issued to Mississippi Road Supply Company and the appellant was the beneficiary. The insurance contract provided that the Insurance Company of North America would pay the beneficiary ten thousand dollars ($10,000.00) in the event the insured lost his life "... resulting directly and independently of all other causes from bodily injuries caused by accident occurring while the policy is in force as to the Insured, herein called such injuries."
There is very little dispute as to the facts in this case. The issue here is whether or not the facts establish the claim of the beneficiary that the insured died as the result of an accident independent of all other causes.
The testimony shows that on Christmas Eve, December 24, 1969, Mr. and Mr. Ed C. Taylor went to the Community Mart". Mrs. Taylor purchased groceries and Mr. Taylor purchased "some beer." He began drinking at the store. On the way home he began to "fuss" or quarrel with Mrs. Taylor. When she advised Mr. Taylor that she and the children were going to a Christmas party, Mr. Taylor became angry. The next morning Mr. Taylor began to drink beer and quarrel with Mrs. Taylor. He left the house and did not return until the family was eating Christmas dinner. He refused to eat with the family, but ate afterward in the kitchen. After he had eaten his dinner he again began to drink beer, and again began to quarrel with Mrs. Taylor. At this point he struck Mrs. Taylor knocking her glasses off and causing her to fall on a couch. He then went out into the yard. Mrs. Taylor followed her husband out to the front porch of the house. Mr. Taylor told Mrs. Taylor that he would fix the car so they could not go. She asked him to wait until she could take the neighbors' children home. Mr. Taylor then threw a glass of water at Mrs. Taylor, striking Mrs. Taylor on the hip and causing her to fall and scream. Mr. Taylor then said, "I am going to kill you." He walked toward his truck. At this point *751 Carson Taylor, a sixteen-year-old son of Mr. and Mrs. Taylor, ran out of the house with a shotgun in his hands. He jumped over a woodpile and fired the shotgun. Mrs. Taylor heard a rifle fire several times after the shotgun fired. Mrs. Taylor got the children and ran away from the house. She later made out an affidavit against her husband for an assault upon her. When the officers went to serve the warrant they found Mr. Taylor dead. His body was near his truck and there was a .22 rifle near his body. The proof showed that Mr. Taylor had died of a gunshot wound.
Mrs. Taylor filed a sworn claim with the appellee insurance company in which she described how the accident happened by saying:
"Justifiable homicide. Shot by son because deceased would shoot son's mother."
The appellant's son, Carson, now lives with his mother. She testified that she had talked to him about the incident. He was not summoned to testify, and if he had been summoned, he could not have been forced to testify over his objection to facts that could have incriminated him. It is, therefore, doubtful that a presumption arises against the plaintiff to the effect that if such witness were not introduced, the jury was authorized to assume that such witness would testify against the plaintiff. However, we do not think it necessary to study this question in view of our holding in this case.
The appellant tried the case upon the theory that she could and did show that her husband died as the result of a gunshot wound, that this proof established a prima facie case of accidental death, and that the burden of proof then shifted to the insurance company to rebut this prima facie case by proving affirmatively that the death of the insured was the result of his own wrongful acts. It is now contended that since the insurance company offered no testimony, appellant was entitled to a directed jury verdict for the amount set out in the policy.
It is true that where an injury causing death appears to have been sustained through external and violent means, a presumption arises that such injury was sustained through accidental means. American National Insurance Company v. Craft, 222 Miss. 847, 77 So.2d 679 (1955); Metropolitan Life Insurance Company v. Williams, 180 Miss. 894, 178 So. 477 (1938); Continental Casualty Company v. Daniels, 173 So. 302 (Miss. 1937); Continental Casualty Company v. Meadows, 242 Ala. 476, 7 So.2d 29 (1942).
Although it is sometimes said that the burden of proof shifts to the defendant, strictly speaking, the burden of proof never shifts to the defendant. Where a plaintiff has made out a prima facie case of "accidental death" the defendant is then required to go forward with the proof to show that the prima facie testimony of an accident is not the true facts.
On the other hand, where the plaintiff's own testimony shows that the death of the insured was brought about by the wrongful acts of the insured himself, the defendant is not required to go forward with affirmative proof to rebut the presumption established by a prima facie case. Aetna Life Insurance Company v. Beasley, 272 Ala. 153, 130 So.2d 178 (1961); Anno. 26 A.L.R.2d 436, § 10 (1952).
We are convinced that the testimony in this case, taken with all the inferences to be drawn from the evidence, shows that the deceased Ed C. Taylor was shot by his son Carson Taylor at a time when Ed C. Taylor had assaulted Mrs. Taylor and had threatened to kill her. But, assuming this to be true, is this sufficient to avoid liability and payment under the terms of the insurance contract?
At the outset, it should be observed that where one is injured by shooting or otherwise and such injury is not the result *752 of misconduct or an assault by the insured, the injury or death is accidental within the meaning of the policy and the insurer is liable. See: Occidental Life Insurance Company of California v. Barnes, 226 Miss. 396, 84 So.2d 423 (1956); Georgia Casualty Company v. Alden Mills, 156 Miss. 853, 127 So. 555 (1930).
In Fidelity and Casualty Company v. Johnson, 72 Miss. 333, 17 So. 2, 30 L.R.A. 206 (1895) the Court stated that death at the hands of a mob by hanging is within the terms of a policy insuring against "Bodily injuries sustained through external, violent, and accidental means."
The Court stated:
"... In these and all like cases in which death occurs by violent means, external to the man, and against or without intention or concurrence of will on the part of the man, death may properly be called an accident... ." 72 Miss. at 337, 17 So. at 3.
The opinion also quotes the definition given by Biddel in his work on insurance as follows:
"... `An injury may be said objectively to be accidental, though subjectively it is not; and, if it occurs without the agency of the insured, it may logically be termed accidental, though it was brought about designedly by another person.' ..." 72 Miss. at 337, 17 So. at 3.
In Georgia Casualty Company v. Alden Mills, supra, the Court quoted the above statements from Fidelity and Casualty Company v. Johnson, supra.
The Georgia Casualty Company case, supra, was reaffirmed in Robinson v. United States Fidelity & Guaranty Company, 159 Miss. 14, 131 So. 542 (1931).
In the Occidental Life Ins. Co. v. Barnes, 226 Miss. 396, 84 So.2d 423 (1956) we said:
"On the other hand, where one is insured against accidental injury or death, and the insured culpably provokes an encounter, or is the aggressor therein, in the course of which, or as the result of which, the insured is killed or injured, the death or injury is not accidental within the meaning of the policy; for in such case, the injury or death is the natural and probable consequence of the act of the insured, and cannot be said to be accidental. 29 Am.Jur., Insurance, Sec. 980; Annotation, 26 A.L.R.2d 399." 226 Miss. at 399-400, 84 So.2d at 424.
It will be noted that this opinion did not expressly set out the phrase, "but is unforeseen insofar as he is concerned." However, we cited, 29 Am.Jur., Insurance, § 980, which is now 44 Am.Jur.2d Insurance, § 1247, p. 92 (1969) and which included the required phrase.
We have often cautioned attorneys that it is dangerous to borrow language from reasoning of written opinions, because such language, isolated from its context, is apt to become invested with a quality wholly inappropriate for use in an instruction on a given case. Knight v. State, 215 Miss. 251, 60 So.2d 638 (1952); Gulf, M. & N.R. Co. v. Weldy, 193 Miss. 59, 8 So.2d 249 (1942). We again bring this to the attention of the Bench and Bar, because it is apparent that the language in one of the defendant's instructions is taken from the Occidental Life case, supra.
It has been generally held by the courts throughout the United States that where the insured did not know and had no reason to believe that his misconduct would result in his death, his injury and death may be found not to have been reasonably contemplated or foreseeable and so to be "accidental" to the insured. See cases collected in 44 Am.Jur.2d Insurance, § 1248, p. 94 (1969); Anno. 26 A.L.R.2d 423, § 5 (1952); Anno. 26 A.L.R.2d (Supp.) 181 § 2.
This rule is particularly applicable in family quarrels. The text writer points out this fact in 44 Am.Jur.2d Insurance, § *753 1249, p. 95 (1969) in the following language:
"One situation in which the courts are inclined to find accidental death or injury even though the assault involves the use of a deadly weapon is presented by so-called family quarrels, ordinarily between husband and wife, especially where there is evidence that such disputes were a common incident of the parties' relationship, and had never before called forth extreme violence in resisting. However, the mere fact that the assault committed by the insured was upon a member of his family rather than an outsider is not sufficient, standing alone, to show that the injury or death was not a foreseeable consequence, and so not accidental, where the circumstances otherwise indicate that the insured, in making the attack, should have anticipated violent resistance."
See also, to the same effect, the following cases: Rodolph v. New York Life Insurance Company, 412 P.2d 610 (Wyo. 1966); Lincoln Income Life Insurance Company v. Alexander, 231 Ark. 63, 328 S.W.2d 266 (1959); Robinson v. Carolina Casualty Insurance Company, 232 S.C. 268, 101 S.E.2d 664 (1958); Wylie v. Union Casualty & Life Insurance Company, 15 Ill. App.2d 448, 146 N.E.2d 377 (1957).
In the case of Aetna Life Insurance Co. v. Beasley, 272 Ala. 153, 130 So.2d 178 (1961), where the insured met his death in his home by a gunshot wound inflicted by his fourteen-year-old son at a time when the insured husband was intoxicated and had stated that he intended to kill his wife and son, the court went at length to differentiate between "accidental death" and "death caused by accidental means." The Court said:
"The appellant contends that because the insured was the aggressor in the instant situation the insurer is not liable. The general rule is stated in 45 C.J.S. Insurance § 788, p. 827, and is quoted by the Court of Appeals in United Security Life Insurance Company v. Clark, 40 Ala.App. 542, 115 So.2d 911, 914:
`If insured is innocent of aggression or wrongdoing, and is killed or injured in an encounter with another, his death or injury is accidental, or is caused by accidental means, within the policy, as where he is injured while defending himself against an unprovoked assault; and even though he is the aggressor, if he could not reasonably anticipate that his acts or course of action would result in death or bodily injury at the hands of this antagonist, insurer may be held liable.'

"The same question was considered in the often-cited case of Mutual Life Ins. Co. of New York v. Sargent, 51 F.2d 4, 5, by the Circuit Court of Appeals, Fifth Circuit, in an appeal from the District Court for the Northern District of Alabama:
`That death is none the less accidental, within the terms of a policy like the one in suit, because of the fact that it results from the intentional act of another, if the insured is innocent of aggression or wrongdoing, or even if he is the aggressor, if he could not reasonably anticipate bodily injury resulting in death to himself at the hands of another. [Citing cases].'" (Emphasis added) 272 Ala. at 156-157, 130 So.2d at 181.
The Court then said:
"We cannot say as a matter of law that the husband, although intoxicated and belligerant, intended to kill his wife and son, or that the natural and probable consequence of his actions was that his son, who had never physically resisted or reacted to his father's threats and abuses toward his mother, would turn upon his father and kill him when he again threatened and assaulted his wife.
Under the circumstances here present, and the law previously cited, the court properly submitted the case to the jury. *754 See Annotation, 26 A.L.R.2d § 5, p. 423... ." 272 Ala. at 157, 130 So.2d at 182.
The testimony introduced in the instant case shows that Mr. Ed Taylor threatened to kill Mrs. Taylor. He knocked her glasses off her head and hit her with a glass of water, but she also testified that she did not pay much attention to his threats, he had threatened her "several times before at different times." She testified that she was not afraid of her husband, because it was "something he did, sort of a habit. He'd just say, `I'll kill you' which he said about a lot of people, and he told me he would kill me several times which I didn't ... just thought it was talk." She testified that her husband hit her several times, "Just slapping." She said: "But I wasn't scared I was gonna get killed at all. My husband never would have killed me. My husband didn't intend to kill me, I assure you."
The record further reveals that in the absence of the jury Mrs. Taylor was asked:
"Q. Would you, as a sober ordinary housewife feel that his death (Mr. Taylor's) if he were shot by Carson, was foreseeable by him?
"A. No, sir it was not."
Moreover, there is nothing in the record to indicate that Mr. Taylor might have expected his son Carson to shoot him during a family quarrel. The issue as to whether or not Mr. Taylor might have reasonably foreseen that his son would shoot him during a family quarrel under the circumstances shown in this case, was a jury question.
The court, however, refused to permit the jury to pass upon the issue of foreseeability, first by denying a proper instruction (No. 9) for plaintiff on this issue, and, second, in giving instructions for defendant to the effect that if the deceased provoked an encounter with his wife and was killed as a result of this "encounter or dispute" the death of Ed C. Taylor was not accidental within the meaning of the policy. The appellee insurance company's instructions were peremptory in nature, and did not present the issue as to whether or not the deceased lost his life as the result of an "accident" within the meaning of the policy. 26 A.L.R.2d 423, § 5 (1952).
The judgment of the trial court is therefore reversed and the case is remanded for a new trial to accord with the foregoing opinion.
Reversed and remanded.
BRADY, PATTERSON, SMITH and SUGG, JJ., concur.