**Billie J. VOWELL, Plaintiff,**

v.

**PHYSICIANS MUTUAL LIFE INSURANCE COMPANY and Amex Life Assurance Company, Defendants.**

**Civ. A. Nos. EC 88–71–D–D, EC 88–72–D–D.**

United States District Court, N.D. Mississippi, E.D.

April 17, 1989.

David T. Wilson, Jr., Louisville, Miss., for plaintiff.

Charles W. Spillers, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause is before the court on the defendants' motions for summary judgment regarding coverage on certain life insurance policies. Defendants also moved in the alternative for partial summary judgment on the plaintiff's claims for punitive damages and extra-contractual damages. Plaintiff has responded that this was an accidental death covered by the insurance policies and that extra-contractual damages may be recovered. After a review of the motion, briefs, authorities presented, and record as a whole, the court is of the opinion that only partial summary judgment as to the punitive and extra-contractual damage elements is warranted.

### I. *Factual Background*

Plaintiff Billie J. Vowell ("Vowell") brought separate actions against Physicians Mutual Insurance Company and Amex Life Assurance Company ("Insurers") to recover the benefits of her deceased husband's life insurance policies. The plaintiff's husband, Paul E. Vowell ("Paul"), died of a gunshot wound on July 10, 1987.

According to the statements given by several eye witnesses, Paul Vowell initiated an altercation with his son, Paul Randall Vowell ("Randy"). During the altercation, Paul Vowell went from his front yard into his home and returned with a shotgun. Paul fired the shotgun in the air, possibly in the direction of Randy, and ran toward Randy with the shotgun. Apparently, Randy returned to his car, grabbed a pistol off of his dashboard, fired a shot into the air, and then fired the gun toward his father, killing him. Whether Paul Vowell intended to kill his son or knew his son had access to a gun is uncertain on the record before the court. The Winston County Sheriff's Department arrested Randy Vowell for manslaughter in the shooting death of Paul Vowell. On August 18, 1987, the Justice Court dismissed the manslaughter charge against Randy Vowell.

On September 23, 1987, the plaintiff made a claim for the proceeds of the insurance policies. Physicians Mutual and Amex conducted an investigation and denied the plaintiff's claim to the policy proceeds on the grounds that the insured's death was a natural and probable consequence of his actions and could not be considered accidental. At the time the insurance companies made the decision to deny the claim for benefits, the insurance companies possessed the following documents: the signed statements of Billie J. Vowell, Randy Vowell, Myra Vowell, and Linda Buchanan, the medical examiner's report, Paul Vowell's death certificate, the Winston County Sheriff's Department report concerning the death of Paul Vowell, the accidental death claim statement signed by Billie Vowell, the Justice Court judgment, and certain information from Winston County Sheriff Billy Rosamond.

Paul Vowell was insured against accidental death. Amex's life insurance policy provided that they would not be liable for any loss caused by either the insured's "(1)

commission of, or attempt to commit, a felony; or (2) being engaged in an illegal activity or occupation." Physician Mutual's policy provided that benefits are not payable for a loss resulting from "injury sustained while commiting a felony."

## II. *Conclusions of Law*

■ The insurance companies have moved for summary judgment on the basis that the insured's death was not the result of an accident, the insured's death was the result of his commission of a felony, or that the insured's death was the result of his engaging in illegal activity. The insurance companies further claim that they have acted in good faith in denying the plaintiff's claim. The plaintiff claims that this death was the result of an accident, that a felony was not committed, and that the deceased's actions did not constitute "illegal activity." The court will consider whether the insurance companies are liable under the life insurance policies before taking up the issue of punitive damages and extra-contractual damages.

### A. Death by Accidental Means

The insured's death was obviously caused by a gunshot wound to the head during an altercation between the insured and his son. It is undisputed that the insured died through external and violent means. In such a situation, a presumption arises that such injury was sustained through accidental means. *Taylor v. Insurance Company of North America*, 263 So.2d 749, 751 (Miss.1972); *Davis v. Continental Cas. Co.*, 560 F.Supp. 723, 728 (N.D. Miss.1983). Judge William C. Keady has explained the rationale underlying this presumption of accidental death as follows:

> Thus, it is well settled that there is a distinction between death through accidental means and a true accidental death. Death by accidental means, the relevant standard under defendant's insurance policy, is determined from the position of the insured whereas a true accidental death is determined from an objective viewpoint. Consequently, although a third party may have intended to cause the death of the insured, the insured's

death may still have been sustained through accidental means within the definition of accident under the policy.

*Davis*, 560 F.Supp. at 728.

In order to rebut this presumption, the insurance companies have attempted to show that the insured was foreseeably killed during an altercation which he initiated. The Mississippi Supreme Court has long held as follows:

> [W]here one is insured against accidental injury or death, and the insured culpably provokes an encounter, or is the aggressor therein, in the course of which, or as a result of which, the insured is killed or injured, the death or injury is not accidental within the meaning of the policy; for in such case, the injury or death is the natural and probable consequence of the act of the insured, and cannot be said to be accidental.

*Taylor*, 263 So.2d at 752; *Occidental Life Ins. Co. v. Barnes*, 226 Miss. 396, 84 So.2d 423, 424 (1956); *Davis*, 560 F.Supp. at 728. In a situation involving a family quarrel, the courts have been more inclined to find that death is an accident despite aggression by the insured with a deadly weapon. *Davis*, 560 F.Supp. at 729; *Taylor*, 263 So.2d at 753. Defendants have produced convincing evidence that Paul Vowell was the aggressor and that his son was acting in self defense. However, this alone is insufficient to establish that the death was not an "accident" within the meaning of the policy.

"The insured's death must have been reasonably foreseeable by him or by a reasonably prudent man in his position." *Davis*, 560 F.Supp. at 729. The Mississippi Supreme Court has recognized that "where the insured did not know and had no reason to believe that his misconduct would result in his death, his injury and death may be found not to have been reasonably contemplated or foreseeable and so to be 'accidental' to the insured." *Taylor*, 263 So.2d at 752. Defendants do not suggest that Paul Vowell knew that he would be killed during this altercation. The issue is whether it would have been reasonably foreseeable to Paul Vowell, or a reasonably prudent per-

son in his position, that his misconduct would result in his death. This issue is primarily a question of fact. The court must determine whether the plaintiff has set forth sufficient facts to raise a material issue of fact in order to preclude summary judgment.

Summary judgment is appropriate where the record before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The moving party must set out the basis on which it believes that summary judgment is justified and the non-moving party must then demonstrate a genuine issue of material fact to preclude summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–26, 106 S.Ct. 2548, 2553–55, 91 L.Ed.2d 265, 273–75 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions.... The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202, 216 (1986).

Although the defendants have produced strong evidence that the death of the insured would not constitute an accident, the plaintiff has produced sufficient evidence to create material issues of fact in this regard. The basic facts appear undisputed, but the parties vigorously disagree as to the atmosphere and surrounding circumstances. Given the presumption, the uncertainty regarding the exact nature of the altercation, the issue of foreseeability, and other contested issues, the court is of the opinion that the better course would be to exercise caution and proceed to trial on the issue of whether or not the insured's death qualifies as an accident within the meaning of the policies.

### B. Policy Exclusions

■ Defendants also argue that the plaintiff's claim is not covered under the policy because the insured's death occurred during the commission of a felony or dur-

ing "illegal activity." This court has ruled on numerous occasions that insurance policies are to be construed in accordance with general principals of contractual construction. *Reece v. State Farm Fire & Cas. Co.,* 684 F.Supp. 140, 143 (N.D.Miss.1987); *Western Line Consol. Sch. Dist. v. Continental Cas. Co.,* 632 F.Supp. 295, 301 (N.D. Miss.1986). However, Mississippi courts recognize the general rule that provisions of an insurance contract are to be construed strongly against the drafter. *Brander v. Nabors,* 443 F.Supp. 764, 769 (N.D. Miss.), *aff'd,* 579 F.2d 888 (5th Cir.1978); *Williams v. Life Ins. Co. of Georgia,* 367 So.2d 922, 925 (Miss.1979). The Mississippi rule is that the court must construe any ambiguities in a contract of insurance in favor of the insured and in favor of a finding of coverage. *Government Employees Ins. Co. v. Brown,* 446 So.2d 1002, 1006 (Miss.1984); *Monarch Ins. Co. of Ohio v. Cook,* 336 So.2d 738, 741 (Miss. 1976); *New Orleans Furniture Mfg. Co. v. Great Am. Ins. Co.,* 413 F.2d 1278, 1280 (5th Cir.1969). The question before the court is whether the insurance policies at issue clearly and unambiguously exclude coverage based upon the allegedly unlawful activity of the insured.

Plaintiff has raised factual issues regarding the commission of a felony or the attempted commission of a felony by Paul Vowell. Defendant argues that Paul Vowell would have been guilty of aggravated assault or "attempted" manslaughter. Miss.Code Ann. § 97–3–7 provides that a person is guilty of aggravated assault if he:

(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm....

Plaintiff has created factual issues as to whether Paul Vowell intended to cause serious bodily injury to his son. Miss.Code Ann. § 97–3–35 provides that: "[t]he kill-

ing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Defendant argues that the facts establish "attempted" manslaughter. Plaintiff argues that it is a jury question as to whether Paul Vowell was attempting to kill his son. The court is not convinced that summary judgment is appropriate on the "attempted" manslaughter theory. Material factual issues preclude summary judgment on the basis of the felony exclusion.

Amex's policy also provides an exclusion for any loss resulting from a person's being engaged in an illegal activity or occupation. "Illegal activity or occupation" is a vague and broad exclusion. Certainly, Paul Vowell was not engaged in an illegal occupation. Assuming that a misdemeanor was committed instead of a felony, the court is uncertain as to whether one illegal act would constitute "illegal activity". Would an insured's trespassing or loitering preclude recovery because these were "illegal activities?" Ambiguous provisions are to be construed strongly against the drafter of the insurance contract. *Government Employees,* 446 So.2d at 1006; *Williams,* 367 So.2d at 925. Given the factual disputes and the ambiguous contractual language, the court does not find that summary judgment is appropriate on this basis.

### C. The Award of Punitive Damages

■ The plaintiff is required to prove the absence of an arguable or legitimate reason on the part of the insurance company in refusing to pay a claim in order for the beneficiary to recover punitive damages for tortious breach of contract in Mississippi. *See, e.g., Pioneer Life Ins. Co. v. Moss,* 513 So.2d 927, 930 (Miss.1987); *Blue Cross and Blue Shield of Mississippi v. Campbell,* 466 So.2d 833, 844 (Miss.1984); *Gorman v. Southeastern Fidelity Ins. Co.,* 775 F.2d 655, 659–660 (5th Cir.1985); *Davidson v. State Farm Fire & Cas. Co.,* 641 F.Supp. 503, 506 (N.D.Miss.1986). The plaintiff in a "bad faith" case has the bur-

den of proof on the "legitimate or arguable reason" issue. *Mutual Life Ins. Co. of New York State v. Wesson,* 517 So.2d 521, 530 (Miss.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988); *Campbell,* 466 So.2d at 844. The issue of "bad faith" is not necessarily a jury issue. *Gorman,* 775 F.2d at 658.

Additionally, the plaintiff must prove either (1) that the insurer acted with malice or (2) that the insurer acted with gross negligence or reckless disregard of the rights of others in order to recover punitive damages for non-payment of an insurance claim. *Sharpe v. Employer's Mutual Cas. Co.,* 808 F.2d 1110, 1113 (5th Cir.1987); *Harrison v. Benefit Trust Life Ins. Co.,* 656 F.Supp. 304, 307 (N.D.Miss.1987); *Scott v. Transport Indemnity Co.,* 513 So.2d 889, 896 (Miss.1987); *Aetna Casualty & Surety Co. v. Day,* 487 So.2d 830, 832 (Miss.1986). The defendant insurance companies have shown a very strong basis for denying plaintiff's claims. Defendants conducted a thorough investigation and have shown good faith in dealings with the plaintiff. Plaintiff has not shown acts of bad faith or any conduct that would create a material issue of genuine fact on the issues of punitive damages. The plaintiff has failed to convince this court that the insurance companies' denial of the claim reached the "heightened status of an 'independent tort'" sufficient to support an award of punitive damages. *State Farm Fire & Cas. Co. v. Simpson,* 477 So.2d 242, 250 (Miss.1985).

### D. The Award of Extra–Contractual Damages

■ The issue of extra-contractual damages is more difficult. Plaintiff has conceded that it is not entitled to punitive damages, but continues to assert a claim for extra-contractual damages. The court has found that punitive damages are certainly not warranted in the case *sub judice.* However, the court is reluctant to hold that extra-contractual damages are precluded thereby.

The court recognizes the numerous decisions from the Mississippi Supreme Court,

and the federal courts interpreting the decisions of the Mississippi Supreme Court, which hold that extra-contractual damages are warranted only where "bad faith" is established. *See Tutor v. Ranger Ins. Co.,* 804 F.2d 1395, 1399 (5th Cir.1986); *Peel v. American Fidelity Assurance Co.,* 680 F.2d 374, 376–77 (5th Cir.1982); *State Farm Fire & Casualty Co. v. Simpson,* 477 So.2d 242, 253 (Miss.1985); and *Stanton & Associates v. Bryant Const. Co., Inc.,* 464 So.2d 499, 502 (Miss.1985). However, "Bad Faith" insurance law is a dynamic and unsettled area of the law in Mississippi. *See Eichenseer v. Reserve Life Ins. Co.,* 682 F.Supp. 1355 (N.D.Miss. 1988).

The Justices' concurrences and dissents in recent years have suggested that the law regarding extra-contractual damages is in the process of change. The Supreme Court has recently indicated that the award of extra-contractual damages is separate and apart from an award of punitive damages and a finding of "bad faith" where the insured is successful on his contractual claim. *Blue Cross & Blue Shield v. Maas,* 516 So.2d 495, 498 (Miss.1988) (Robertson, J., joined by Lee, P.J., and Prather, Anderson, Griffin, and Zuccaro, JJ., specially concurring). A majority of the court has finally concluded that extra-contractual damages may be awarded in the absence of punitive damages.

The court's role in a diversity case is to ascertain what the Mississippi Supreme Court would hold in a similar case. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The court's duty is to view itself as an inferior state court and to make a decision that it thinks a state court would reach. *Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394, 396–97 (5th Cir.1986); *DiPascal v. New York Life Ins. Co.,* 749 F.2d 255, 260 (5th Cir.1985). The court recognizes that it is the privilege of the Mississippi Supreme Court to change the law and that it is the role of a federal court to apply state law as it exists. *Jackson,* 781 F.2d at 397.

The court believes the Mississippi Supreme Court will eventually establish a rule to provide certain forms of damages as a matter of right to successful insured plaintiffs or develop an intermediate standard for all extra-contractual damages. In equity and fairness, the insurer should bear at least the litigation expense of the insured caused by the insurer's refusal to pay a claim which proved to be legitimate.[1]

---

1. Justice Robertson's three justice dissent in *Crenshaw* represents the most complete discussion of the anticipated shift in this area of the law. The dissent sets a standard for extra-contractual damages independent of punitive damages and then excepts from that standard prejudgment interest and attorneys' fees. The dissent persuasively argues that prejudgment interest, attorneys' fees and legal expenses should be awarded in every action in which the judgment is for the insured under the insurance policy. *Bankers Life & Cas. Co. v. Crenshaw,* 483 So.2d 254, 298 (Miss.1985) (Robertson, Walker and Prather, J.J., dissenting). These elements of damage would be allowed as a matter of right so that the successful litigant would receive, in balance all he was entitled to under the policy.

The six-justice concurrence in *Maas,* however, made no mention of this distinction and failed to define the precise contours of the standard for extra-contractual damages. A reasonable interpretation of the *Maas* case is that prejudgment interest, attorneys' fees, and other economic losses are recoverable as "ordinary tort damages." The concurrence stated that Mississippi's law of damages allowed an insured to plead, prove, and recover attorneys' fees, legal expenses, emotional distress damages, and pre-judgment interest "over and above his contract claim." *Maas,* 516 So.2d at 498.

If reference to "ordinary tort damages" indicates only that extra-contractual damages will be allowed in the absence of punitive damages pursuant to the same "independent tort" standard, then *Maas* is a minimal advance in this developing area of the law. However, if the six justices in *Maas* intended to adopt part of the *Crenshaw* dissent and established a different standard for extra-contractual damages or treat certain elements of damages differently, then they have made a great advancement in this important area of the law. Because the Mississippi Supreme Court's course is uncertain in this area, the court is reluctant to adopt, through the reference in *Maas,* the standard set forth in the *Crenshaw* dissent or establish its own standard through an *Erie*-guess. The plaintiff has neither raised nor briefed this issue. The plaintiff has not offered any intermediate level test which would allow recovery of these elements of damage under the facts of this case. In the instant case, the court does not find it necessary to reach this issue.

The court recognizes the *Maas* concurrence as a promise of change and an indication that extra-contractual damages will be more readily

Until the Mississippi Supreme Court develops a clearly defined standard for these extra-contractual damages, the court will find it difficult to award the damages apparently allowed under the *Maas* decision. The case *sub judice* is not the proper case for the court to develop a new standard for extra-contractual damages through an *Erie*-guess.

The *Maas* concurrence, though it does not define the standard to be applied to such elements as prejudgment interest in refusal-to-pay cases, does represent an upheaval in the existing Mississippi law on that point. The general rule in breach of contract actions in Mississippi is that prejudgment interest may be awarded in the discretion of the trial court, in the absence of a statutory or express contractual term, where the amount was liquidated at the time the claim was filed. *LaBarre v. Gold*, 520 So.2d 1327, 1332–33 (Miss.1987); *Aetna Casualty and Surety Co. v. Doleac Electric Co.*, 471 So.2d 325, 331 (Miss.1985); *Glantz Contracting Co. v. General Electric Co.*, 379 So.2d 912, 918 (Miss.1980). The principle has been recognized in the context of the insurance failure to pay case. *Home Insurance Co. v. Olmstead*, 355 So.2d 310 (Miss.1978); *Western Line Consol. Sch. v. Continental Cas. Co.*, 632 F.Supp. 295, 304 (N.D.Miss.1986). *See also Blue Cross and Blue Shield v. Maas*, 516 So.2d at 498 (six Justice concurrence). In the absence of a clear rule of law, it is the opinion of this court that the generally applicable rule regarding the award of prejudgment interest should apply. The court therefore denies defendants' motion as to plaintiff's claim for prejudgment interest.

The court therefore declines to preclude prejudgment interest at this juncture. The court is of the opinion that the defendants are entitled to summary judgment on the claim for all other forms of extra-contrac-

tual damages under Mississippi law as it presently exists.

### E. Conclusion

Defendant insurance companies have moved for summary judgment on the liability issue and partial summary judgment on punitive and extra-contractual damages. Plaintiff has raised genuine issues of material fact as to whether this death was an "accident" within the meaning of the policy and whether Paul Vowell's conduct precluded recovery because of the exclusionary provisions of the insurance contract. Plaintiff has set forth sufficient evidence to create factual issues regarding policy coverage. Plaintiff has not set forth sufficient facts to preclude partial summary judgment on the elements of punitive and extra-contractual damages, with the exception of prejudgment interest. The court finds that other forms of extra-contractual damages are not in order under current Mississippi law and the plaintiff has conceded that punitive damages are not appropriate. Accordingly, the court will disallow the punitive and extra-contractual damage claims, other than prejudgment interest, and allow the liability issue to proceed to trial. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14, 91 L.Ed.2d at 216.

An order in accordance with this opinion will be issued.

available to successful insureds. However, the court recognizes also that it performs a limited role in diversity cases—to apply the law as it exists. The Mississippi Supreme Court bears the responsibility of developing this area of the law in accordance with equity and justice. Apparently, it has begun the process of change. The Supreme Court now has the opportunity to establish a rule to allow certain elements of

damages automatically or to develop an intermediate standard for all extra-contractual damages. Both adjustments would protect insureds with legitimate claims from the unnecessary and often enormous expense of collecting the promised benefits of their insurance policies. The court would openly welcome this improvement in the law.