James R. BROWN, Plaintiff,

v.

AMERICAN INTERNATIONAL LIFE
ASSURANCE COMPANY OF
NEW YORK, Defendant.

Civ. A. No. J90–0244(W).

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 27, 1991.

Judy Guice, Biloxi, Miss., Vaughn Davis, Jr., Jackson, for plaintiff.

Kenneth E. Bullock, Laurel, Miss., Richard T. Lawrence, Jackson, for defendant.

MEMORANDUM OPINION
AND ORDER

WINGATE, District Judge.

Submitted for decision to the trial judge on legal briefs and stipulated facts, this case presents the ultimate question whether an innocent beneficiary under an accident insurance policy, which does not contain a felony exclusion clause, may recover for the death of an insured who apparently died in the midst of committing arson. The defendant insurance company argues that this circumstance does not constitute an "accident" under the policy, and more, that public policy grounds should preclude recovery in these instances. All parties agree that this controversy is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, which creates federal causes of action for recovery of benefits under employee welfare and pension plans, 29 U.S.C. § 1132(a)(1)(B) (1988). Accordingly, the court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.[1] For the reasons which follow, the court is persuaded to find for the plaintiff.

## Facts

On October 6, 1988, Mrs. Bobbie Jo Brown perished in a fire which ignited in her home located in Jackson, Mississippi, wherein she lived with her husband, James R. Brown, the plaintiff. The facts surrounding the fire strongly suggest that Mrs. Brown died while attempting to commit arson for insurance proceeds. At the time of her death, Mrs. Brown, 47 years old, was under criminal indictment for the alleged murder of her son.

Following an investigation, the Jackson Fire Department, assisted by its Arson Unit, concluded that the fire which consumed the Brown residence was incendiary in nature. Gasoline had been poured throughout the three bedrooms-two baths house. Mrs. Brown's burned body was found in one of the bathrooms, where it appeared she was trapped by the flames. Firemen found her beating on the wall.

Her car, a 1988 Buick LeSabre, was found in the garage with the keys in the ignition and its engine running. The car was filled with many of Mrs. Brown's personal belongings. Included among these belongings was a 35-page itemized inventory of the contents of each room of the house found in her purse. The car also contained mail, medication, clothes and money. Several days before the fire, Mrs. Brown had rented storage space at a facility in Jackson, Mississippi, where she had stored some of her personal property. Prior to the fire, Mrs. Brown also had purchased a fire insurance policy on the home from State Farm Insurance Company, even though at the time the home was insured already by another fire insurance company.

From these facts, the investigators concluded that Mrs. Brown planned to commit arson in order to derive insurance proceeds. The fire investigators surmised from the physical evidence that after having loaded her car with personal effects, Mrs. Brown re-entered the house to ignite the gasoline, but became entrapped in the flames when the gasoline unexpectedly ignited from some heat source, in keeping with the statement of a neighbor, Ronald Clark, who reported that he heard an explosion. The Hinds County Coroner, convinced that Mrs. Brown intended to commit arson, listed as cause of death on her Certificate of Death: "house fire—arson." The investigators discovered no evidence which linked plaintiff's husband, Mr. James R. Brown, to any such scheme to commit arson. At the time of the fire, Mr. Brown was at work, in Lafayette, Louisiana, approximately two hours outside the City of Jackson, Mississippi.

Taken to a local hospital, Mrs. Brown died approximately five hours later. She had second and third degree burns over 100% of her body. Apparently, she told hospital staff that others had threatened to burn her house and on the advice of her attorney she had tried to remove personal items from the home. Later she was told

---

**1.** (a) The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

by the treating physician that her injuries were so severe that she would die in a short while. Investigators, who were granted access to her, asked her about the cause of the fire. She would not or could not respond. Until fifteen minutes before her death she was able to talk, spending her last moments with her husband who had been summoned from work.

At the time of her death, Mrs. Brown was insured by an accident insurance policy provided through her husband's employer, Frito–Lay. Issued by the defendant, American International Life Assurance Company, through Pepsi Company, which is the parent company of Frito–Lay, the policy listed Mr. James R. Brown as the beneficiary. The benefits plan promulgated by Pepsi Company provided that the beneficiary would be paid $100,000.00 for "injury resulting in loss of life." Injury is defined as follows in the policy:

> "Injury" wherever used in this policy means bodily injury caused by an accident occurring while this policy is in force as to the Insured person and resulting directly and independently of all other causes and loss covered by this policy.

The policy contains several exclusions. However, the policy does not contain any provision expressly excluding coverage if death results from a felony or other violation of law.

On November 1, 1988, the plaintiff, James Brown, filed a claim for payment of the policy proceeds with Pepsi Company. Pepsi Company sent the claim to Bowman Company, an insurance broker. On November 14, 1988, Bowman Company sent the claim to the defendant, American International Life Assurance Company. The defendant in turn referred the claim to American International Adjustment Company, Inc., a division of the Assurance Company, to determine eligibility. Thereafter, by letter on April 3, 1989, the defendant denied the claim for payment. The defendant insurance company stated in the letter that after full review of the case, it was persuaded to deny the claim because it had concluded that Mrs. Brown had set fire to her home and, consequently, her resulting death was not "caused by accident" as stated in the policy. The plaintiff, James R. Brown appealed the decision to the appeals committee of the insurance company; however, the denial was upheld. Following the appeal, the plaintiff filed this suit in this court against American International Life Assurance Company, alleging that defendant wrongfully had denied him the insurance benefits.

## Standard of Review

[1] All parties agree that this case is governed by principles of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* A denial of ERISA benefits may be reviewed by this court either under a de novo standard or under an abuse of discretion standard. In the United States Supreme Court case of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Court stated:

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.... Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "factor[ ] in determining whether there is an abuse of discretion."

Hence, whether the *de novo* or abuse of discretion standard applies here depends upon whether the benefit plan does or does not give discretion to an administrator or fiduciary to determine eligibility or to construe the terms of the plan.

The plaintiff in the present case argues that de novo review applies since the insur-

ance plan did not grant express discretionary authority to a plan administrator or fiduciary. *See Cathey v. Dow Chemical Co. Medical Care Program,* 907 F.2d 554, 558 (5th Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991) (must be *express* grant of discretionary authority). The defendant argues that the plan did in fact grant express discretionary authority to the plan administrator and any party designated by the plan administrator to construe eligibility under the plan.

■ This court holds that here the appropriate standard of review is abuse of discretion since the plan grants discretionary authority to the plan administrator, or any party designated by the plan administrator, to construe eligibility under the plan. The Benefits Plus Plan contains the following language:

> 5.3 *Claims Procedure:* The Plan Administrator, or a party designated by the Plan Administrator, shall make all determinations as to the right of any person to an Employee Contribution, coverage or reimbursement under the Plan.
>
> 5.4 *Other Administrative Power and Duties:* The Plan Administrator shall have such powers and duties as may be necessary to discharge its functions hereunder, including:
>> (a) to construe and interpret the Plan, decide all questions of eligibility ...
>> (g) to designate or employ persons to carry out any of the Plan Administrator's fiduciary duties or responsibilities under the Plan.

So, here, the Plan Administrator, Pepsi Company, or a party designated by Pepsi Company was empowered to construe the plan. That the insurance company was contemplated as a designated party is also clear from the plan language. The accident insurance section of the Benefits Plan states: "The insurance company will determine in each case whether the loss was accidental under the terms of the policy," and, further, "If the insurance company denies your claim, in whole or in part, you will be told why and what additional information or steps may be necessary to perfect the claim."

The court further finds that the insurance company is an administrator and that the abuse of discretion standard applies even if it be found here that the insurance company operated under a conflict of interest in construing the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1563 (11th Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).

### *"Accident"—Arguments and Approach*

The plaintiff contends that principles of law etched in Mississippi jurisprudence supply the proper approach for the court's determination whether the defendant's interpretation of its policy was an abuse of discretion. As acknowledged by both parties, a key inquiry here is whether the insurance company abused its discretion in its construction of the term "accident" in the policy. As earlier noted, the term "accident" is not specifically defined in the policy.

The plaintiff initially notes that for purposes of construing the term "accident," the policy "must be liberally construed in favor of a policyholder or beneficiary ... and strictly construed against the insurer in order to afford the protection which the insured was endeavoring to secure when he applied for the insurance." *See Wickman v. Northwestern National Insurance Co.,* 908 F.2d 1077, 1084 (1st Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). The plaintiff points out that under Mississippi law death is an accident when it "occurs by violent means, external to the man, and against or without intention or concurrence of will on the part of the man." *Fidelity & Casualty Co. v. Johnson,* 72 Miss. 333, 17 So. 2, 3 (1895). If the proof shows death by violent or external means, a presumption arises that such injury was sustained as a result of an accident. *Taylor v. Insurance Co. of North America,* 263 So.2d 749, 751 (Miss. 1972).

The plaintiff contends that a majority of jurisdictions which have dealt with construing the term "accident" in the absence of a violation of law exclusion have held that recovery was permitted.[2] *See* Robert A. Shapiro, Annotation, *Liability Under Life or Accident Policy Not Containing a "Violation of the Law" Clause for Death or Injury Resulting From Violation of Law by Insured*, 43 A.L.R.3d 1120 (1972 & Supp.1991). In support of its claim that Ms. Brown's death was "caused by an accident" as stated in the policy, the plaintiff primarily relies on the case of *Taylor v. Insurance Co. of North America*, 263 So.2d 749, 751 (Miss.1972). In that case, the insured was involved in an altercation with a family member which resulted in his death by a firearm. The Mississippi Supreme Court, in analyzing whether the death was an accident, focused on whether the insured knew or had reason to know that his misconduct would result in his death. *Id.* at 752. The court found that the insured did not have a reasonable expectation of being gunned down by a family member. *Id.* at 752.

The plaintiff claims that the legal principles of the *Taylor* case are applicable to the case at hand. Specifically, the plaintiff argues that Ms. Brown did not intend for the fire to start when it did even if she intended to burn the house. For support, the plaintiff cites *Taylor v. John Hancock Mutual Life Insurance Co.*, 11 Ill.2d 227, 142 N.E.2d 5 (1957), which permitted recovery under an accidental death policy when the insured poured gasoline in a house and was killed when the gas spontaneously ignited. The plaintiff further supports its claim that Ms. Brown's death was unforeseeable by noting the captain of fire investigations in this case who has 15 years experience could only recall one occasion of an arsonist perishing in its own fire. For these reasons, the plaintiff alleges the death of Ms. Brown was "caused by an

accident" within the provisions of the policy.

Defendant argues that its denial of benefits was proper because from either a subjective or objective analysis of the facts, Mrs. Brown's death was no accident. Defendant relies upon the case of *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). In the *Wickman* case, the insured died after plunging from a bridge approximately forty or fifty feet high onto railroad tracks below. Immediately prior to his fall, he was observed by a passing motorist who saw the decedent standing on the outside of the bridge's guardrail, holding on to it with only his right hand. After his fall, and before his death, the decedent had been transported to the emergency room of the St. Luke Hospital. There, Ms. Trudy Dooley, the hospital emergency admissions secretary, had asked the decedent various questions about his family and the circumstances of the fall. The decedent opined that his family didn't care about him and, as for what had happened, he said, "I jumped off." Based upon these and other facts, the trial court found that Wickman's death was no accident and denied the claim of Wickman's widow for accidental death and dismemberment benefits under a group policy issued by Northwestern National Life Insurance Company, which insured the decedent, Paul Wickman.

On appeal, the United States First Circuit Court of Appeals affirmed the trial court. The central question, of course, was whether the decedent's death was the result of an accident within the meaning of the policy. After canvassing the definitional field for the essence of "accident," defined in the policy as "an unexpected, external, violent, and sudden event," the Court first rejected the accidental

---

**2.** Actually, the authority cited by the plaintiff in support of this contention states that an increasing number of cases permit recovery in the absence of a felony exclusion clause even though the insured commits a criminal act. This recovery is allowed on a finding that the insured could not have reasonably foreseen or

expected the death. Robert A. Shapiro, Annotation, *Liability Under Life or Accident Policy Not Containing a "Violation of the Law" Clause for Death or Injury Resulting From Violation of Law by Insured*, 43 A.L.R.3d 1120, 1124 (1972 & Supp.1991).

means/results approach. The Court described this approach thusly:

The first approach distinguishes between accidental means and accidental results. Under this approach, where the insurance contract insures against "accidental means," the means which produced death or injury must have been unintentional. According to this interpretation, if the act proximately leading to injury is intentional, then so is the result, even if the result itself was neither intended nor expected. To constitute an accident under this standard, the cause of the injury, as Couch explains, must be "unforeseen, unexpected, and unusual; happening or coming by chance without design, that is casual or fortuitous, as opposed to designed or intended."

Noting that this approach has met with recent rejections around the country and that such an approach mires the law into a "Serbonian Bog," the Court looked elsewhere for an illuminative standard. The Court's search carried it to a subjective/objective analysis. The Court reasoned:

Thus, the reasonable expectations of the insured when the policy was purchased is the proper starting point for a determination of whether an injury was accidental under its terms.

\* \* \* \* \* \*

If the fact-finder determines that the insured did not expect an injury similar in type or kind to that suffered, the fact-finder must then examine whether the suppositions which underlay that expectation were reasonable.

\* \* \* \* \* \*

If the fact-finder determines that the suppositions were unreasonable, then the injuries shall be deemed not accidental. The determination of what suppositions are unreasonable should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences.

\* \* \* \* \* \*

Finally, if the fact-finder, in attempting to ascertain the insured's actual expectation, finds the evidence insufficient to accurately determine the insured's subjective expectation, the fact-finder should then engage in an objective analysis of the insured's expectations.

*Wickman,* 908 F.2d at 1088.

The Court then held:

Applying these concepts, we believe that the magistrate did not err in ruling that Wickman's death was not an accident within the terms of the insurance policy. The linchpin of the magistrate's findings was his conclusion that "Wickman knew or should have known that serious bodily injury or death was a probably consequence substantially likely to occur as a result of his volitional act in placing himself on the outside of the guardrail and hanging on with one hand." This finding equates with a determination either that Wickman expected the result, or that a reasonable person in his shoes would have expected the result, and that any other expectation would be unreasonable.

*Id.* at 1088–89.

Defendant seeks a similar analysis and holding here. Essentially, defendant argues that a reasonable person in Mrs. Brown's situation would have viewed injury as highly likely to result from any intentional act of arson.

### Finding

■ Congress broadly preempted state law when enacting ERISA, and the statute must be interpreted under principles of federal substantive law. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Congress intended for the courts to develop federal common law governing employee welfare benefit plans and pension plans. *In re HECI Exploration Co.,* 862 F.2d 513, 523 n. 18 (5th Cir.1988). Not only may the courts look to federal decisions which interpret ERISA, the development of federal common law may be aided by state law. *Id.* at 523 n. 19. The state law application, however, must be consistent with the policy of ERISA. *See Pennzoil Co. v. Federal Energy Regulatory Commission,* 645 F.2d

360, 388 (5th Cir.1981), cert. denied, 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982). The purpose of ERISA is to ensure that employees and beneficiaries are not deprived of eligible and anticipated benefits. *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985). Congress declared a national policy "to protect interstate commerce and the interests of participants in employee benefits plans and their beneficiaries...." 29 U.S.C. § 1001(b).

■ Whether this court applies either *Taylor v. Insurance Co. of North America,* 263 So.2d 749 (Miss.1972), or *Wickman v. Northwestern National Insurance Co.,* 908 F.2d 1077 (1st Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990), the analysis begins with a determination of the insured's subjective expectation: whether at the time of the injury, the insured expected or reasonably should have expected to suffer an injury similar in type or kind to that later experienced, that is, whether the resulting injury was anticipated, or foreseeable and probable. Applying this test to the stipulated facts in this case, the court concludes that Mrs. Brown did not intend to be injured; she fully expected to survive the fire and to cash in on fraudulent insurance claims. The facts clearly paint this picture. Her car was packed with personal belongings, parked outside the residence with its motor still running when the firemen arrived. She had stored other personal items away and had prepared a bogus 35–page itemized inventory, apparently to be submitted to the insurance company of items supposedly consumed by the fire. She had taken out additional fire insurance on the house. When found, Mrs. Brown was in the bathroom, where she had sought refuge, beating on the wall. From these facts it seems that somehow the gasoline surprisingly exploded and the resulting fire trapped her in the bathroom.

The next question is whether Mrs. Brown was realistic in her expectation of escaping harm. As recognized in the *Wickman* case, *supra,* an insured's expectation, although genuinely felt, may be unreasonable. So, the next inquiry is whether Mrs. Brown realistically should have expected to escape injury during her attempt to enflame her home. The court finds in this circumstance that her expectation was reasonable, in spite of the ultimate outcome. Dave Berry, an investigator in the Arson Division of the Jackson Fire Department, testified that few arsonists perish in their own manufactured flames. Moreover, there is nothing about the facts of this case which indicates otherwise, that Mrs. Brown reasonably should have expected injury.

Accordingly, the court finds from the unmistakable evidence that the insured reasonably did not expect an injury similar in type or kind to that suffered, and that the insurance company in construing its obligation under its own policy abused its discretion in holding otherwise.

### Public Policy

■ Finally, the defendant argues that public policy concerns support its denial of benefits in this case. The defendant says that since voluntary, dangerous, and criminal acts should not be encouraged, the beneficiary's recovery here would violate public policy. Defendant cites no cases in support of its argument.

The court finds the argument unpersuasive. The primary reason to deny benefits to an insured under the public policy doctrine is to prevent that insured from reaping the rewards of his own misconduct. Obviously, such a denial would serve the public policy concerns of deterring crime. However, in this case, the beneficiary is innocent to the act. No one contends that plaintiff James R. Brown played any role in his wife's criminal scheme. Rather, he paid monthly premiums to the insurance company and reasonably expected that he would receive the proceeds of the policy. Against this backdrop, where a beneficiary is innocent of any wrongdoing, the concern of encouraging crime is outweighed by these considerations. *See Harrington v. New England Mutual Life Insurance Co.,* 873 F.2d 166, 168 (7th Cir.1989) (public policy argument does not apply to innocent beneficiary's recovery because of insured's wrongful act). Cf. *Wallace v. Connecti-*

*cut General Life Insurance Co.*, 477 F.2d 680, 682 (5th Cir.1973) (Texas law does not find public policy claim persuasive although insured died while committing a felony); *McGory v. Allstate Insurance Co.*, 527 So.2d 632, 638 (Miss.1988) (absent an exclusion provision on both co-insureds, innocent spouse can recover on fire insurance policy despite wrongful act of other spouse).

Of course, the insurance company could have protected itself against this development. This policy did not contain a felony exclusion provision. The insurance company easily could have included such a provision; however, for some reason, it chose not to do so. If a felony exclusion provision had been in this policy, the court certainly would have held that a denial of benefits was in order. *See, e.g., Sisters of the Third Order of St. Francis v. Swedish American Group Health Benefit Trust,* 901 F.2d 1369, 1372 (7th Cir.1990) (trust exclusion for engaging in illegal or criminal activity precludes recovery of claimant when insured died from drunken driving); *Terry v. Protective Life Insurance Co.,* 717 F.Supp. 1203, 1206 (S.D.Miss.1989) (insured's death which was result of felony precluded recovery under insurance policy because of violation of law exclusion). Having failed to include such a provision, the insurance company is relegated to arguing for relief under the public policy exception, which, as above discussed, the court finds inapplicable here.[3]

### Conclusion

The court, therefore, concludes that the defendant abused its discretionary authority when deciding that Ms. Brown's death was not "caused by an accident" under the terms of the policy. The plaintiff in this case is entitled to recover under the benefits plan as a result of his wife's "accidental" death.

SO ORDERED.

---

**3.** During oral argument the court inquired why, if a public policy argument would preclude recovery in these instances, would an insurance contract ever need a felony exclusion provision. Defendant provided no satisfactory response.